Robert W. WHITACRE,
Appellant–Plaintiff,

v.

STATE of Indiana and the Indiana
Department of Natural Resources,
Appellees–Defendants.

No. 15A05–9204–CV–128.

Court of Appeals of Indiana,
Fifth District.

Aug. 30, 1993.

Douglas R. Denmure, Aurora, for appellant-plaintiff.

Linley E. Pearson, Atty. Gen., Mary Ann Habeeb, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellees-defendants.

BARTEAU, Judge.

Robert W. Whitacre appeals the trial court's judgment in favor of the Indiana Department of Natural Resources (IDNR) on Whitacre's petition for declaratory judgment. The sole issue on appeal is whether Indiana Code 14–3–3.4, the Indiana Historic Preservation and Archeology Act (the "Act"), is applicable to privately owned property. We conclude that it is and affirm the trial court.

## FACTS

The facts are straightforward. Whitacre and his wife are amateur archeologists. In 1982, they discovered a Hopewell Indian site with artifacts dating to *circa* 150 A.D. on a 40–acre farm in Dearborn County, Indiana. With permission from the property owner, they began excavating areas of the site and removing artifacts. In 1987, the Whitacres purchased the farm and continued excavating and conducting investigations. In July, 1989, after hearing that a new law had been passed, Whitacre inquired of an archeologist at IDNR about the necessity of a permit for conducting investigations on his own property. Whitacre was informed that he would need a permit. After investigating the law on his own, Whitacre determined that he did not need a permit and filed this declaratory judgment action.

The trial court concluded that Ind.Code 14–3–3.4 was applicable to private property and not just property owned or leased by the State of Indiana.

## DISCUSSION

The thrust of this appeal is whether a person needs to have an archeological plan approved by the Indiana Department of Natural Resources before that person may disturb *private* property for the purpose of discovering artifacts or burial objects.

The Historic Preservation and Archeology Act, I.C. 14–3–3.4, established the division of historic preservation and archeology within the IDNR to administer and develop the programs and policies of the Act. I.C. 14–3–3.4–2. As gleaned from the Act, the policies to be furthered by the Division include encouraging the continuous maintenance and integrity of historic sites and structures and coordinating the activities of local historical associations, commissions and private individuals and organizations interested in the historic culture of Indiana. It has been stated that protecting our national and state heritage through the preservation of archeological sites is included in the broad spectrum of legitimate interests of government. *Indiana Dept. of Natural Resources v. Indiana Coal Council, Inc.* (1989), Ind., 542 N.E.2d 1000, 1005. "The information in these sites expands our knowledge of human history and prehistory and thus enriches us as a state, nation and as human beings." *Id.*

When construing a statute, this court is guided by several rules of statutory construction. First, it must be noted that when a statute is clear and unambiguous on its face, the court need not, and indeed may not, interpret the statute. *Economy Oil Corp. v. Indiana Dept. of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215, 218. When a statute is ambiguous, the court must ascertain the intent of the legislature and interpret the statute to effectuate that intent. *Id.* When so doing, we read the statutes of an act as a whole and attempt to give effect to all provisions. *Id.* A statutory amendment changing a prior statute indicates a

legislative intention that the meaning of the prior statute has been changed. *Wright v. Fowler* (1984), Ind.App., 459 N.E.2d 386. Another consideration in construing a statute is to give effect to the purpose of the statute. *State v. Adams* (1992), Ind.App., 583 N.E.2d 799, *trans. denied.*

■ With these guidelines in mind, we conclude that private property is included within the scope of I.C. 14–3–3.4 as amended. Unless the legislature intended to give the state the power to oversee and regulate the treatment of historical and archeological findings on private property, section 15 of the amended act is virtually meaningless, as a review of the old and new statutes shows. Prior to 1989, I.C. 14–3–3.4 restricted activities that affected historic sites or structures only within the boundaries of property owned or leased by the state. Indiana Code 14–3–3.4–7 provided:

> A person who knowingly, without a permit, conducts a field investigation or alters historic property within the boundaries of property owned or leased by the state commits a Class B misdemeanor.

Thus, prior to 1989, Whitacre was not required to have an archeological plan approved by the state in order to conduct archeological investigations and excavations on his own property.

In 1989, the legislature amended I.C. 14–3–3.4. Specifically, I.C. 14–3–3.4–7 was amended to provide:

> Except as provided in sections 14 through 16 [I.C. 14–3–3.4–14—14–3–3.4–16] of this chapter, a person who knowingly, without a permit, conducts a field investigation or alters historic property within the boundaries of property owned or leased by the state commits a Class A misdemeanor.

Sections 14 through 16 are new sections that provide for (1) the adoption of rules establishing standards for plans, I.C. 14–3–3.4–14, (2) the necessity of a plan, I.C. 14–3–3.4–15, and (3) steps to take when buried human remains are disturbed, I.C. 14–3–3.4–16. Of particular relevance to this appeal is section 15, which provides:

> (a) A person who disturbs the ground for the purpose of discovering artifacts or burial objects must do so in accordance with a plan approved by the department under section 14 [I.C. 14–3–3.4–14] of this chapter.
> (b) A person who recklessly, knowingly, or intentionally violates this section commits a Class A misdemeanor.

I.C. 14–3–3.4–15. "Plan" is defined as "an archeological plan for the systematic recovery, analysis, and disposition by scientific methods of material evidence and information about the life and culture in past ages." I.C. 14–3–3.4–1.

Nothing in chapter 3.4 explicitly states that the chapter applies only to property owned or leased by the state or that it applies to private property. However, section 13 does provide that the requirement of a plan when disturbing ground does not apply to (1) surface coal mining regulated under I.C. 13–4.1, (2) cemeteries and human remains subject to I.C. 23–14, (3) disturbing the earth for an agricultural purpose, and (4) collecting any object (other than human remains) that is visible on the surface of the ground. These activities are typically conducted on private property, not state owned or leased property; thus, section 13 is superfluous if the chapter applies only to state owned or leased property.

■ Further, prior to the amendments, I.C. 14–3–3.4–7 prohibited conducting field investigations or *altering historic property* within the bounds of property owned or leased by the state without a permit. "Historic property" is defined as "any historic site or structure," I.C. 14–3–3.4–1, and "historic site" or "historic structure" is any site or structure important to the "general, archeological, agricultural, economic, social, political, architectural, industrial, or cultural history of Indiana." *Id.* Thus, in effect, I.C. 14–3–3.4–7 already prohibited disturbing the ground of state owned or leased property without a permit if anything of historic significance was on the property. The new section 15 adds nothing to the chapter unless it is interpreted as expanding the scope of coverage by prohibiting the disturbance of *any* "ground" for

purposes of discovering artifacts or burial objects without an approved plan. I.C. 14–3-3.4–15. The legislature specifically did not restrict this section to only "the ground" of state owned or leased property as it did in section 7. Thus, we conclude that the legislature intended to mean any ground within the State of Indiana, whether owned by the state or privately owned.

This construction of the statute effectuates the policies of the Act. The purpose of the Historical Preservation and Archeology Act is to further our understanding of the state's heritage and historical culture by preserving and studying what has been left behind. Obviously, not all sites of historical or archeological significance are located on property owned or leased by the state. Consequently, prior to the 1989 amendments, the state did not have the means to prevent the destruction, inadvertent or intentional, or share in the knowledge of possibly significant sites located on private property. The legislature, through the 1989 amendments, expanded the scope of the Act to include not only "historic sites" and "historic structures," as defined in I.C. 14–3-3.4–1, and located on state owned or leased property, but also to include any property where a person discovers or tries to discover "artifacts" or "burial objects," as defined in I.C. 14–3-3.4–1. Through the amendments, the state may regulate activities on private property that affect our historical and archeological culture; thus, the state is better able to discover and preserve more of our heritage. This is the purpose of the Act and is best effectuated by construing the Act to include private, as well as state owned, property.

We also find support for interpreting the statute to protect private as well as state owned property in a recent opinion from the Seventh Circuit Court of Appeals. In *United States of America v. Gerber* (7th Cir.1993), 999 F.2d 1112, the Seventh Circuit had to decide if a conviction pursuant to the federal Archaeological Resources Protection Act of 1979 was valid where the Indian artifacts had come from privately owned land in Indiana. The Court interpreted the Act as applying to artifacts found on privately owned property as well as property owned by the federal government or by Indian tribes, even though the Act explicitly refers only to property owned by the federal government or by Indian tribes. The Court concluded that such an interpretation best furthered the purposes of the Act "to secure, for the present and future benefit of the American people, the protection of archaeological resources and sites...." *Gerber*, 999 F.2d at 1114. It is also interesting to note that the Court assumed the amended Indiana statute at issue in our case applied to privately owned land. 999 F.2d at 1116 ("Granted, all fifty states have laws expressly protecting their archaeological sites; and in 1989, too late for this case, Indiana amended its law to forbid—redundantly—what Gerber had done [which was to disturb artifacts on private property].") Consistent with the interpretation of the federal Act, we interpret the Indiana Act as applying to privately owned property.

The trial court's judgment is affirmed.

SHARPNACK, C.J., and CONOVER, J., concur.