Charles B. MILLER, Superintendent, State of Indiana Department of Corrections, Appellants–Respondents,

v.

Breland D. WALKER, Appellee–Petitioner.

STATE of Indiana, Appellant–Respondent,

v.

William C. MASON, Appellee–Petitioner.

No. 48A05–9403–CV–115.

Court of Appeals of Indiana, Fifth District.

Nov. 22, 1994.

Pamela Carter, Atty. Gen., David A. Arthur, Deputy Atty. Gen. Indianapolis, for appellant.

Richard Waples, Indiana Civil Liberties Union, Indianapolis, for appellees.

## OPINION

BARTEAU, Judge.

In this expedited appeal, we are called upon to determine whether the credit awarded inmates who successfully complete education programs should be deducted from the term of their sentence or from their projected release date. The statute at issue is Ind.Code 35–50–6–3.3. It reads:

Sec. 3.3. (a) In addition to any credit time a person earns under section 3 of this chapter and in addition to any reduction of sentence a person receives under IC 35–38–1–23, a person earns credit time if:

(1) the person is in credit Class I; and

(2) the person successfully completes requirements to obtain one (1) of the following under IC 20–10.1–12.1–1(b)(1) or from an approved institution of higher learning (as defined under IC 20–12–21–3):

(A) A general equivalency degree.

(B) A high school diploma.

(C) An associates's degree.

(D) A bachelor's degree.

(b) The amount of credit time a person may earn under this section is the following:

(1) Six (6) months for completion of a general equivalency degree.

(2) One (1) year for graduation from high school.

(3) One (1) year for completion of an associate's degree.

(4) Two (2) years for completion of a bachelor's degree.

(c) A person does not earn credit time under subsection (a) unless the person completes at least a portion of the degree requirements after June 30, 1993.

(d) Notwithstanding IC 35–50–6–5, a person may not be deprived of credit time earned under this section.

(e) The maximum amount of credit time a person may earn under this section is the lesser of:

(1) four (4) years; or

(2) one-third (⅓) of the person's total applicable credit time.

Before us are two appeals brought by the State of Indiana in response to the court ordered releases of Breland D. Walker and William C. Mason. Both Walker and Mason completed education programs entitling them to receive credit under I.C. 35–50–6–3.3. Walker earned a general equivalency degree, entitling him to six months credit under I.C. 35–50–6–3.3(a)(2)(A) and (b)(1). Mason earned a Bachelor of Science degree, entitling him to two years credit under I.C. 35–50–6–3.3(a)(2)(D) and (b)(4). The Department of Correction deducted the education credit each earned from their fixed terms and calculated a projected release date for each after the deduction. Its position is as follows:

**Department of Correction calculations of education credit deduction**

Walker

| Sentenced to 3 years executed | | 3.00 years |
|---|---|---|
| Subtract education credit (6 months) | − | .50 years |
| | | 2.50 years |
| Figure good time credit | − | 1.25 years |
| (½ of 2.5 = 1.25) | | |
| Time left to serve: | | 1.25 years |

Mason

| Sentenced to 25 years executed | | 25.00 years |
|---|---|---|
| Subtract education credit | − | 2.00 years |
| | | 23.00 years |
| Figure good time credit | − | 11.50 years |
| (½ of 23 years = 11.5 years) | | |
| Time left to serve: | | 11.50 years |

Pursuant to the Department of Correction's calculations, Walker would be released on May 4, 1994, and Mason would be released on January 20, 1995. Both Walker and Mason challenged the Department of Correction projected release dates, contending that the education credit should instead be deducted from their earliest possible release date to gain the full benefit from the statute.

Walker filed a Petition for Writ of Habeas Corpus in the Madison County Circuit Court, contending that his correct release date was February 4, 1994. Mason filed a Petition for Post Conviction Relief in the Marion County Superior Court, Criminal Division, Room No. 2, contending that his correct release date was January 20, 1994. Both courts ruled in favor of the prisoners, holding that the Department of Correction erroneously calculated the release dates, that the education credit should have been deducted from the earliest possible release date, and that Walker and Mason were entitled to release. The application of the education credit, as calculated by the prisoners and adopted by the trial courts, is as follows:

**Trial court & prisoner's calculation of education credit deduction**

Walker

| Sentenced to 3 years executed | | 3.00 years |
|---|---|---|
| Subtract good time credit | − | 1.50 years |
| | | 1.50 years |
| Subtract education credit | − | .50 years |
| Time left to serve | | 1.00 year |

Mason

| Sentenced to 25 years executed | | 25.00 years |
|---|---|---|
| Subtract good time credit | − | 12.50 years |
| | | 12.50 years |
| Subtract education credit | − | 2.00 years |
| Time left to serve | | 10.50 years |

The State appeals, asking this court to find that the interpretation given I.C. 35–50–6–3.3 by the lower courts is erroneous.

### STANDARD OF REVIEW

A question of statutory interpretation is a matter of law to be determined by this court. *Joseph v. Lake Ridge School Corp.* (1991), Ind.App., 580 N.E.2d 316, 319, *reh'g denied, trans. denied.* We are not bound by a trial court's legal interpretation of a statute and need not give it deference. *One 1968 Buick, 4 Door v. State* (1994), Ind.App., 638 N.E.2d 1313. Rather, we must independently determine the statute's meaning and apply it to the facts before us. *Id.*

### STATUTORY CONSTRUCTION

When construing a statute, this court is guided by several rules of statutory construction. First, it must be noted that when a statute is clear and unambiguous on its face, this court need not, and indeed may not, interpret the statute. *Whitacre v. State*

(1993), Ind.App., 619 N.E.2d 605, opinion adopted by *Whitacre v. State* (1994), Ind., 629 N.E.2d 1236. Instead, we hold the statute to its clear and plain meaning. *Scheub v. Town of Schererville* (1993), Ind.App., 617 N.E.2d 585. When a statute is ambiguous, we must ascertain the intent of the legislature and interpret the statute to effectuate that intent. *Id.* When so doing, we read the statutes of an act as a whole and attempt to give effect to all provisions. *Whitacre*, 619 N.E.2d at 606.

### AMBIGUOUS?

■ Is I.C 35–50–6–3.3 ambiguous? We think not. It provides that if a prisoner completes certain educational milestones, he will earn a certain amount of credit time. The language employed by the legislature is simple and clear, and not susceptible to more than one meaning. In Walker's case he earned six months credit for completing his general equivalency degree and in Mason's case he earned two years for completing his Bachelor of Science degree. The educational credit time is earned "[i]n addition to any credit time a person earns under section 3 of this chapter and in addition to any reduction of sentence a person receives under IC 35–38–1–23."

Thus, looking at Walker's situation, there is no dispute that he earned six months credit for his general equivalency degree. In addition, he earned good time credit at a rate of one day for each day of imprisonment served. I.C. 35–50–6–3. He did not receive any reduction of sentence under IC 35–38–1–23.

Walker received a five year sentence with two years suspended, leaving a three year executed sentence remaining. The education credit is deducted from that sentence. In applying the education credit, it makes no difference whether the education credit is deducted prior to figuring good time credit earned to that point, or deducted after subtracting the good time credit earned to that point.

For illustrative purposes, assume Walker had served one year of a three year sentence at the time he earned his general equivalency degree. If the education credit time is deducted from the fixed term, his sentence would in effect be reduced to thirty months. Assuming he earned all the good time credit he could, he would have to serve fifteen months of his three year sentence. Thus, he would remain in jail three additional months after he received his credit.

### Education credit deducted from fixed term

| | |
|---|---|
| Sentenced to 3 years executed | 3.00 years |
| Subtract education credit (6 months) | − .50 year |
| | 2.50 years |
| Figure maximum good time credit | − 1.25 years |
| Total time which must be served | 1.25 years |
| Time already served when education credit awarded | − 1.00 year |
| Additional time which must be served | .25 year |

Using the same illustration, if the education credit time is deducted after figuring good time credit, the one year Walker had served could have earned him an additional one year good time credit. Thus two years could be subtracted from his three year sentence, leaving one year to serve. Then the six month education credit would be subtracted, leaving six months to serve. Assuming Walker would continue to earn good time credit, he would remain in jail three additional months after he received his credit.

### Education credit deducted after deducting earned good time credit

| | |
|---|---|
| Sentenced to 3 years executed | 3.00 years |
| Subtract time served when education credit is awarded | − 1.00 year |
| Subtract good time credit earned to date | − 1.00 year |
| Time remaining | 1.00 year |
| Subtract education credit | − .50 year |
| Time remaining | .50 year |
| Figure good time credit still possible | − .25 year |
| Time left to serve after education credit is awarded | .25 year |

This is the plain and unambiguous meaning of the statute.

What then is the problem? The problem is that deduction of the education credit reduces the actual days served in prison. This in turn, reduces the number of good time credit days that can be earned. I.C. 35–50–6–3 provides:

(a) A person assigned to Class I *earns one (1) day of credit time for each day he is imprisoned* for a crime or confined awaiting trial or sentencing.

(b) A person assigned to Class II earns one (1) day of credit time for every two (2) days he is imprisoned for a crime or confined awaiting trial or sentencing.

(c) A person assigned to Class III earns no credit time.

(emphasis added).

Which class a prisoner is assigned to is based upon the behavior of the prisoner. I.C. 35–50–6–4. Those exhibiting good behavior are assigned to Class I and for each day served earn one corresponding day of good time credit. Receipt of that credit is conditional upon continued good behavior and may be revoked. I.C. 35–50–6–4.

Thus, a prisoner in Walker's situation, without an education credit, could be released eighteen months into his sentence, because, subject to good behavior, he could have accumulated a corresponding eighteen months of good time credit. If he received an additional six month education credit, he argues that he should expect to be released twelve months into his sentence. But, because of the way good time credit works (one day good time credit for each day served), this expectation is erroneous.

The six month reduction in sentence (i.e. six month reduction in days served) has a corresponding six month reduction in the number of good time credit days he can earn because he is not serving that six months and will therefore not receive good time credit for that period. As a result, the previously anticipated eighteen months in good time credit will never be earned. The education credit effectively reduced the sentence to thirty months, so only fifteen months of good time credit could be earned before release. This means the prisoner, on good behavior, would serve fifteen months, rather than his argued twelve months.

Walker and Mason argue that this application effectively cuts the education credit in half, making six months credit in reality three months, and two years credit in reality one year. From the standpoint of their original expectations, this is true. They also argue that this interpretation of the statute is contrary to the intent of the legislature in enacting the statute. In support, they offer the affidavit of the sponsoring legislator, stating his intent that the education credit be deducted from the earliest possible release date. They also offer a letter from the Legislative Services Agency to that effect.

As previously stated, when a statute is unambiguous, we are not permitted to delve into considerations such as the legislative intent behind the enactment, because to do so would amount to an impermissible interpretation of the statute. *Whitacre*, 619 N.E.2d 605. Even if we were permitted to consider legislative intent, neither the letter from the sponsoring legislator nor the one from the Legislative Services Agency is determinative of the legislative intent in the enactment of I.C. 35–50–6–3.3. The motives of individual sponsors of legislation cannot be imputed to the entire legislative body. While such expressions of intent are entitled to respectful consideration, they are not determinative of the legislative intent of the entire body which enacted the legislation. *FGS Enterprises, Inc. v. Shimala* (1993), Ind., 625 N.E.2d 1226 (expression of intent by a subsequent legislature as to the proper construction of a statute is of no judicial force). *See also Carter v. Allen* (1994), Ind.App., 631 N.E.2d 503 (boards and commissions speak only through the minutes and records of their meetings; thus, testimony of two Commissioners is inadmissible to prove the legislative intent of the full body). Further, were we to engage in a search for the legislative intent behind enactment of the statute, we would have to consider the act as a whole. *Whitacre*, 619 N.E.2d 605. To adopt the interpretation of I.C. 35–50–6–3.3 offered by the prisoners would in effect change the plain meaning of I.C. 35–50–6–3, the good time credit statute. An interpretation which creates discord between statutes in the same act, rather than harmonizing them, would seem contrary to the legislative intent.

But, because we find I.C. 35–50–6–3.3 clear and unambiguous, the issue of legislative intent is irrelevant. The statute rewards those who obtain certain educational goals with credit and credit reduces the sentence. We cannot read something into the statute which is not there. Had the legislature wanted to specify that the credit should be deducted

from the earliest possible release date, it could have done so.

The decision of the trial court in Walker's case is reversed. Likewise, the decision of the trial court in Mason's case is reversed. The Department of Correction had correctly calculated the release dates of both prisoners, and the decisions releasing them from incarceration prior to those dates were erroneous.

REVERSED AND REMANDED for reimposition of sentence.

SHARPNACK, C.J., and STATON, J. concur.