INDIANA MUNICIPAL POWER AGENCY and The Indiana Municipal Power Agency Board of Commissioners, Appellants–Defendants,

v.

The TOWN OF EDINBURGH, Indiana, Appellee–Plaintiff.

No. 29A04–0112–CV–559.

Court of Appeals of Indiana.

June 4, 2002.

Michael B. Cracraft, Steven W. Krohne, Hackman Hulett & Cracraft, Indianapolis, IN, Attorneys for Appellants.

William M. Nash, Jones, Patterson & Tucker, Columbus, IN, Attorney for Appellee.

**OPINION**

BAKER, Judge.

Today we examine the trial court's interpretation of Ind.Code § 8–1–2.2–8(d), the statute involving a municipality's authority to appoint a commissioner for its electric power and energy needs. Appellants-defendants Indiana Municipal Power Agency (the Agency) and The Indiana Municipal Power Agency Board of Commissioners (the IMPA Board), appeal the trial court's grant of summary judgment entered in favor of the appellee-plaintiff, Town of Edinburgh (Edinburgh). Specifically, the IMPA Board and Agency assert that Edin-

burgh's appointment of a nonresident as commissioner of that town runs afoul of the provisions set forth in I.C. § 8–1–2.2–8 that require it to appoint a commissioner who is an officer or employee of the municipality or a member or employee of a "board" that oversees the town's utilities. Finding that the statute does not prevent the town from appointing a nonresident to serve as a commissioner, we affirm the trial court's grant of summary judgment in Edinburgh's favor.

## FACTS

The Agency is a "body corporate and politic and a political subdivision" of the State of Indiana established for the purpose of providing "a method for certain ... municipalities to jointly finance, develop, own, manage, and operate, either by themselves or with public utilities, electric generation and transmission facilities appropriate to the present and projected electric energy needs of such municipalities." I.C. § 8–1–2.2–8(a), –1. The IMPA Board is the governing body of the Agency, and consists of thirty-two Commissioners—one for each member municipality appointed pursuant to I.C. § 8–1–2.2–8(d).

The relevant portion of I.C. § 8–1–2.2–8(d) that is the focus of the dispute here provides as follows: "The joint agency shall consist of a board of commissioners. The governing body of each municipality shall appoint one (1) commissioner who *may be an officer or employee of the municipality or a member or employee of the board described in Ind.Code 8–1.5–3–3(a)*." (Emphasis added). The companion statute, I.C. § 8–1.5–3–3(a), reads:

(a) The legislative body of a municipality may, by ordinance, provide for the

control of any or all of its municipally owned utilities by:

(1) the municipal works board;

(2) a board consisting of the members of the municipal legislative body;

(3) a utility service board established under subsection (e) or established before January 1, 1983, under Ind.Code 8–1–2–100 (repealed); or

(4) the board of directors of a department of waterworks established under Ind.Code 8–1.5–4.

Edinburgh is a municipality that owns and operates an electric utility that furnishes retail electric service to customers in and around its corporate boundaries. The town became a member of the Agency on January 23, 1989, pursuant to a contract entered into by the parties. Edinburgh purchases all of its requirements for power and energy from the Agency under a contract that was executed on February 13, 1989.

On August 28, 2000, Edinburgh's Town Council adopted a resolution where it appointed Michael C. Jenner as its commissioner.[1] Jenner is not an officer or employee of the town; nor is he a member or employee of the board that oversees the town's electric utility. Jenner resides in Plainfield and, therefore, is not a resident of the area that is serviced by Edinburgh's municipally owned electric utility.

Jenner is also employed as a professional engineer and is a shareholder and CEO of Alpha Engineering of Indiana, Inc. (Alpha), with offices in Indianapolis. Edinburgh engages Alpha on a "time and materials basis" to provide engineering and other services to the town in accordance with an oral contract entered into by the parties in 1990. Edinburgh pays Alpha

---

**1.** The appointment of a commissioner is to be made by resolution or ordinance. I.C. § 8–1– 2.2–8(d).

$90 per hour for Jenner's engineering services, including his attendance at board meetings in his capacity as the Commissioner of Edinburgh.

The record shows that Edinburgh's previous commissioners had been officers or employees of the town. When Jenner was appointed, there were Edinburgh residents that could have been appointed to serve as the Commissioner. As a result, the IMPA Board rejected Jenner as a Commissioner at its regularly scheduled meeting on January 26, 2001 because he was not an officer or employee of Edinburgh or a member or employee of the board that oversees the town's electric utility.

Edinburgh filed a complaint on February 8, 2001, for a declaratory judgment against the Agency and the IMPA Board, requesting that the trial court determine that it "is not bound to only appoint a member or officer or employee of the municipality or member or employee of a utility service board, but rather may appoint anyone it so desires." Appellant's App. p. 10. The IMPA Board and Agency filed their Answer and asked the trial court to rule that Edinburgh is bound by the provisions of I.C. § 8–1–2.2–8(d) to appoint, as its Commissioner, an individual that is either "an officer or employee of the municipality or a member or employee of the board described in I.C. § 8–1.5–3–3(a)." Appellant's App. p. 5.

The IMPA Board and Agency then moved for summary judgment, contending that the central issue before the trial court was whether Edinburgh could lawfully appoint a consulting engineer as its commissioner who was not a resident of the town. They maintained that permitting a municipality to appoint "anyone it so desires" to serve on the Board contravenes and would render mere surplusage, the specific language set forth in I.C. § 8–1–2.2–8(d). The IMPA Board and Agency also argued that Edinburgh was overpaying Jenner in his capacity as the commissioner in violation of I.C. § 8–1–2.2–8(g). This subsection authorizes a municipality to pay the commissioner "up to fifteen dollars ($15) per day for each day or fraction of a day the commissioner is engaged in the performance of duties under this chapter."

Following a hearing on the motion for summary judgment, the trial court denied the Agency and IMPA Board's motion and, instead, entered judgment for Edinburgh. The trial court signed an order on November 30, 2001, and made the following pertinent findings:

3. The court finds that Indiana code Section 8–1–2.2–8(d) is clear and unambiguous. It therefore must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted. Its words and phrases must be taken in their plain, ordinary, and usual sense.

4. The court finds that the plain, ordinary, and usual sense of the word "may" is to indicate permission, the granting of authority or the absence of a prohibition. The Court therefore finds that the plain and obvious meaning of that provision of Indiana Code Section 8–1–2.2–8(d) at issue is that, in fulfilling its obligation to appoint a commissioner, a municipality is not precluded from appointing an officer or employee of the municipality or a member or employee of the board described in I.C. 8–1.5–3–3(a).

5. The Court therefore denies the defendant's motion for summary judgment and grants summary judgment in favor of the plaintiff, Town of Edinburgh, pursuant to Rule 56(B) of the Indiana Rules of Trial Procedure.

Appellant's App. p. 4–5. The IMPA Board and Agency now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a grant of summary judgment, this court stands in the shoes of the trial court and applies the same applicable standard. *Interstate Cold Storage v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct.App. 1999), *trans. denied.*

We will affirm a grant of summary judgment if sustainable on any theory found in the evidence designated to the trial court. *Jacques v. Allied Bldg. Servs. of Ind., Inc.*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999). Additionally, we do not reweigh the evidence. Rather this court liberally construes all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). Any doubt as to the existence of a factual issue should be resolved against the movant. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994). The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 23–24 (Ind.Ct.App.1999), *trans. denied.*

### II. Summary Judgment For Edinburgh

The IMPA Board and Agency claim that it was error to grant summary judgment for Edinburgh. Specifically, they contend that the trial court erroneously determined that Edinburgh is not precluded from appointing an officer or employee of the town or a member or employee of the board as its commissioner within the meaning of I.C. § 8–1–2.2–8(d). That is, the IMPA Board and Agency maintain that the trial court's decision authorizing Edinburgh to appoint "anyone" as the commissioner violates the restrictive language of the statute. Appellant's Br. p. 7–8.

In resolving this issue, we initially observe that statutory interpretation is a matter of law to be determined by this court. *Miller v. Walker*, 642 N.E.2d 1000, 1001 (Ind.Ct.App.1994). In construing a statute that is ambiguous, the court's foremost goal is to determine and effect legislative intent. *See Whitacre v. State*, 619 N.E.2d 605, 606 (Ind.Ct.App.1993), *adopted by* 629 N.E.2d 1236 (Ind.1994). Moreover, a court should construe and interpret a statute only if it is ambiguous. *Id.* A statute that is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted. *Dep't of State Revenue v. Horizon Bancorp*, 644 N.E.2d 870, 872 (Ind.1994). The words and phrases of such a statute shall be taken in their plain, ordinary, and usual sense. *State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind.1990). Moreover, in determining the legislature's intent with respect to a particular provision, the statute should be examined in its entirety. *Matter of Lawrance*, 579 N.E.2d 32, 38 (Ind.1991). We do not presume that the legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *State ex rel. Hatcher v. Lake Superior Court, Room Three*, 500 N.E.2d 737, 739 (Ind. 1986).

Here, the relevant language of the statute that is disputed by the parties provides that the commissioner "may" be an officer or employee of the municipality or a member or employee of the board. I.C. § 8–1–2.2–8(d). The IMPA Board and Agency urge that construing the word

"may" in the statute to mean "is permitted to" necessarily leads to absurd results. Thus, the IMPA Board and Agency assert that "may" should be construed to mean "shall." Appellant's Br. p. 17.

In support of their claim that the language in I.C. § 8–1–2.2–8(d) prohibits Edinburgh from appointing Jenner as its commissioner, the IMPA Board and Agency direct us to this court's opinion in *Meinschein v. J.R. Short Milling Co.*, 157 Ind. App. 53, 298 N.E.2d 495 (1973). At issue there was the statute governing the leasing by fifth class cities of property no longer used for municipal purposes. The city of Mount Vernon leased river-front property to a sole proprietor who intended to operate a marina. *Id.* at 496. At the time, Ind.Code § 18–5–29–1 provided as follows:

> Any city of the fifth class owning real estate which is no longer used for municipal purposes may lease all or part of the right, title and interest of any such city in and to such real property to any private not for profit corporation or organization located in any such city, for the purpose of conducting recreational activities and making improvements thereon....

The sole proprietor and the city claimed the statute was "permissive in nature and not mandatory and only defines one possible leasing situation, while the Powers of the Cities Act grants much broader powers to lease and is controlling." *Id.* at 497. On appeal, we determined that the word "may" in the statute was directive in nature. *Id.* We observed that "the words 'to any private not for profit corporation or organization located in any such city' are words of limitation expressing a legislative intent that such corporations or organizations are the only allowable lessees, as the city could lease to any qualified person or entity had these words of limitation been

deleted from the statute." *Id.* We noted that if the word "shall" had been used in place of the word "may," the statute would have *required* cities of the fifth class to lease their currently unused real estate, which we determined was not the legislature's intent. Thus, the word "shall" would have been totally inappropriate in the context of the statute.

In light of our holding in *Meinschein*, the IMPA Board and Agency argue that the use of the word "may" in I.C. § 8–1–2.2–8(d) necessarily means that any person a municipality appoints as a commissioner *must* be either: (i) an officer of the municipality; (ii) an employee of the municipality; (iii) a member of the board the municipality has established to oversee its electric utility; or (iv) an employee of that board. However, had the legislature intended the words "officer or employee of the municipality or a member or employee of the board described in Ind.Code 8–1.5–3–3(a)" to be words of limitation, the word "shall" would have been appropriate in the context of the statute. Finally, in distinguishing the circumstances in *Meinschein* from those presented here, we note that in *Meinschein*, there was no compulsion on the part of Mount Vernon to lease its unused land to anyone. If it did lease, however, it was required to lease to a private non-profit organization. In contrast, the municipality here was required to appoint a commissioner. I.C. § 8–1–2.2–8(d). Therefore, the circumstances that existed in *Meinschein*, along with this court's opinion construing the relevant statute in that case, do not support the IMPA Board and Agency's claim that the legislature really meant "shall" when it used the word "may."

The IMPA Board and Agency go on to argue that construing the word "may" to mean "is permitted to" would result in the "absurdity" that a consulting engineer who

could not even be appointed to serve on the town's board, because of the statutory requirement for residency within the area served by the municipal utility, could still be appointed to serve as its commissioner. Appellant's Br. p. 17. Even under the IMPA Board and Agency's restrictive reading of I.C. § 8–1–2.2–8(d), any number of persons who could not even be appointed to serve on a town's municipal works, utility service or waterworks board, because they do not reside in the area served by the board, could still be appointed to serve as its commissioner by virtue of the fact that they are employed by the municipality. As counsel for Edinburgh suggests, a municipality could appoint as its commissioner a seventeen-year-old employed as a lifeguard at its municipal pool and who resides in an adjoining county. Appellee's Br. p. 9–10. Such a scenario may play out a far greater "absurdity" than the appointment of a non-resident, professional, consulting engineer. Equally absurd is the IMPA Board and Agency's suggestion that the trial court's conclusion in this case would permit each of the Agency's thirty-two members to appoint the same individual to be its commissioner. See Appellant's Br. p. 17. Had the legislature intended to limit the potential candidates for appointment as commissioner to those categories of persons enumerated in the statute, it could have simply substituted the word "shall" for the word "may." It did not. Therefore, we find that the trial court properly granted summary judgment in Edinburgh's favor on this issue.

In a related issue, the IMPA Board and Agency urge that the fifteen dollar per day compensation cap placed upon commissioners under I.C. § 8–1–2.2–8(g) "is a recognition that Commissioners already would be compensated for serving as an employee or officer of the municipality or a member or employee of the board." Appel-

lant's Br. p. 19. Thus, the IMPA Board and Agency claim that the meager compensation paid to commissioners under the statute is additional authority for the proposition that Jenner was improperly appointed. It does not necessarily follow, however, that the modest compensation afforded a commissioner under the statute compels the result that the commissioners must already be compensated for serving as an employee or officer of the municipality or a member or employee of its utility board. Moreover, even though Edinburgh acknowledges that the IMPA Board might be compensating Jenner as commissioner in excess of the amount permitted under I.C. 8–1–2.2–8(g), there is nothing in the statute that would preclude him from being employed by another entity and receiving his regular salary. Thus, the IMPA Board and Agency may not prevail on this claim.

Judgment affirmed.

SULLIVAN, J., and DARDEN, J., concur.