Ewa M. SKRZYPCZAK and Michal R. Skrzypczak, Appellants– Defendants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee– Plaintiff.

No. 79A05–9510–CV–422.

Court of Appeals of Indiana.

July 16, 1996.

Richard O. Bovey, Lafayette, for Appellants.

Charles R. Vaughan, Robert W. Johnson, Vaughan and Vaughan Lafayette, for Appellee.

BARTEAU, Judge.

Ewa M. Skrzypczak and Michal R. Skrzypczak appeal the trial court's decision in favor of State Farm Mutual Insurance Company ("Mutual") in its action for declaratory judgment. The Skrzypczaks raise two issues on appeal, which we expand and restate as:

1. Whether State Farm Fire and Casualty Company and Mutual are separate companies?

2. Whether as a separate company, Mutual was required to obtain from the Skrzypczaks a separate written rejection of the underinsured motorist coverage?

3. Whether a signed written rejection by only one of two named policy holders satisfies the statutory requirements?

We reverse.

## FACTS

On October 1, 1993, Ewa was driving, and Michal was a passenger, in their 1988 Mercury Tracer when they were involved in an accident. The driver of the other vehicle was at fault, and was underinsured thereby not fully compensating the Skrzypczaks for their damages. The Skrzypczaks had an automobile insurance policy with Mutual for the Tracer.

On March 4, 1994, Mutual brought an action for declaratory judgment. Mutual asserted that the Skrzypczaks did not have underinsured motorist coverage, nor did the facts require Mutual to provide such coverage to the Skrzypczaks.

A bench trial was held on June 22–23, 1995. On July 24, 1995, the trial judge ruled in favor of Mutual, determining that the Mutual policy did not provide underinsured motorist coverage to the Skrzypczaks for the Tracer. Also, the trial judge determined that Mutual did not breach its duty to properly advise the Skrzypczaks, and did not act in bad faith in its dealings with the Skrzypczaks.

Kim Lafuse was a State Farm Insurance Companies agent. As such, Lafuse could sell auto insurance coverage through Mutual and State Farm Fire and Casualty Company ("Casualty"). Casualty is a subsidiary of Mutual, and both are separately licensed to do business in Indiana. R. 802–03. Compared with Casualty, Mutual provides reduced rates for insurance. To qualify for coverage from Mutual, an insured must be accident and ticket free for three years, and be insured by Casualty for at least one year.

Beginning on August 29, 1986, the Skrzypczaks acquired auto insurance from Lafuse. The Skrzypczaks' insurance for their first car, a Valiant, and for all of their subsequent vehicles, provided coverage in the amounts of $100,000.00 per person, $300,000.00 per accident bodily injury liability policy limits, and uninsured motorist coverage of $25,000.00 per person and $50,000.00 per accident. The initial application for the Valiant shows that a selection was made for no underinsured motorist coverage.

On January 1, 1988, Indiana Code section 27–7–5–2 (West 1993), entitled "Coverage for bodily injury or death; required provisions; rejection[,]" went into effect.

On March 9, 1990, Ewa signed a reinstatement of insurance application through Casualty that indicated a selection was made for no underinsured motorist coverage for the Tracer. On November 9, 1990, State Farm replaced the Tracer's Casualty insurance policy with a Mutual insurance policy. This Mutual insurance policy was in effect at the time of the accident. Mutual does not have a rejection of underinsured motorist coverage specifically for the Tracer signed by either of the Skrzypczaks. R. 1214–18, 1245.

## STANDARD OF REVIEW

Pursuant to the Skrzypczaks' request, the trial judge made special findings of fact and conclusions of law. Thus, we will affirm the judgment unless we conclude that it is clearly erroneous. Ind.Trial Rule 56(A); *Garrod v. Garrod,* 590 N.E.2d 163, 167 (Ind.Ct.App. 1992), *reh'g denied.* To determine whether a judgment is clearly erroneous, we must first determine whether the evidence supports the findings of fact. Second, we must determine whether the findings support the judgment. *Garrod,* 590 N.E.2d at 167. In evaluating whether the findings and judgment are clearly erroneous, we neither reweigh the evidence nor judge the witnesses' credibility. *Id.* We consider only the evidence and reasonable inferences therefrom that support the judgment. *Id.*

## SEPARATE COMPANIES

■ The Skrzypczaks rely on Indiana Code section 27–7–5–2 (West 1993 & Supp. 1995) for their contention that Mutual was required to provide underinsured motorist coverage for the Tracer. This statute became effective on January 1, 1988. P.L. 391–1987(ss), § 1. Essentially, this statute requires insurers to automatically provide underinsured motorist coverage in an amount equal to the insured's bodily injury liability

limits. I.C. § 27–7–5–2; *see United Farm Bureau Mutual Ins. Co. v. Lowe,* 583 N.E.2d 164, 167 (Ind.Ct.App.1991), *trans. denied,* (1992). However, exceptions exist. An insured can reject in writing the underinsured coverage. I.C. § 27–7–5–2. Once rejected, the insured need not offer the "underinsured motorist coverage in or supplemental to a renewal policy in connection with a policy previously issued to the same insured." *Id.* An insurer is only required to automatically provide the underinsured motorist coverage to policies first, or originally, issued on or after January 1, 1988. *Lowe,* 583 N.E.2d at 168. Also, the statute provides in relevant part: "Renewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section." I.C. § 27–7–5–2(b).

Initially, the Skrzypczaks contend that Casualty and Mutual are separate companies within the meaning of Indiana Code section 27–7–5–2. And thus, when Mutual replaced Casualty as the provider of auto insurance coverage for the Tracer, the resulting policy was new within the meaning of the statute. Therefore, the statute required Mutual to provide the Skrzypczaks with underinsured motorist coverage for the Tracer in an amount equal to their bodily injury liability limits, or obtain a written rejection of such coverage.

■ The trial court found that Mutual was organized and existing under Illinois laws, with Bloomington, Illinois, as its principal place of business. Casualty is incorporated under Illinois laws, its corporate headquarters are in Bloomington, Illinois, and is a wholly owned subsidiary of Mutual. Both companies are separately licensed to do business in Indiana. The trial court entered other findings of fact that show the operating interrelationship of the two companies.[1] The evidence supports these findings.

---

1. The trial court found that both companies work through "a single, independent, captive agency force." R. 1333–34 (special findings 1–3, 8). Also, the trial court's findings cover the procedures that are used to determine how and when an insured is covered by Casualty or Mutual. R. 1333–34, 1336–38 (special findings 4, 5, 15, 19).

As illustrated by its findings of fact, and description of Casualty and Mutual as simply "State Farm," the trial court appears to have regarded Casualty and Mutual as a single entity for the purposes of this case.[2] A recent Indiana Supreme Court decision provides precedent for a determination that the trial court's findings do not support such a legal conclusion. *See McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016 (Ind.1995).

In *McQuade,* McQuade was injured while working at Mongo Electronics, which is a subsidiary of Draw Tite, Inc. McQuade filed a claim under Indiana's Worker's Compensation Act. McQuade filed a separate tort claim against Draw Tite. Draw Tite asserted that it was so interconnected with Mongo that it should be considered McQuade's employer for purposes of the Act. Thus, the Act was McQuade's exclusive remedy. The Indiana Court of Appeals affirmed the trial court's grant of summary judgment in favor of Draw Tite. Our Supreme Court reversed.

The Supreme Court discussed the standard that the Indiana Court of Appeals applied, which was " 'whether the parent and subsidiary companies are distinct and separately operated corporations which have made significant and continuing efforts to maintain separate entities.' " *Id.* at 1018 (quoting *McQuade v. Draw Tite, Inc.,* 638 N.E.2d 818, 821 (Ind.Ct.App.1994)). The Supreme Court noted that the Court of Appeals then discussed the fact that the two companies were highly interrelated in some of their operating procedures, and thus should be considered one employer for purposes of the Act. *Id.* at 1018–19. Similarly, here, as discussed *supra,* the trial court discussed the facts indicating that Casualty and Mutual are highly interrelated in their operations.

However, the Supreme Court agreed with the reasoning in *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 661–62 (6th Cir.1979) (determining that the defendant parent company and its subsidiary are separate companies under Kentucky's worker's compensation statute), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47. The court in *Boggs* stated:

> [A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee.

*Id.* at 662. Following this reasoning, our Supreme Court stated "we recognize a subsidiary and its parent corporation-shareholder as separate legal entities." *McQuade,* 659 N.E.2d at 1020.

The Supreme Court noted the traditional equitable rule of allowing third parties to pierce the corporate veil to prevent fraud or unfairness. *Id.* The Supreme Court then stated:

> we think a different standard should apply when a corporation defensively argues that the corporate form should be disregarded. While we have expressed willingness to use our equitable power to disregard the corporate form to prevent fraud or unfairness to *third parties,* we perceive little likelihood that equity will ever require us to pierce the corporate veil to protect the [corporation] that erected it. It was, after all, defendant that chose to structure itself in its present multi-corporate form.

*Id.* (emphasis included).

The case at bar is factually similar to *McQuade.* Here, it is not the Skrzypczaks as the third party, but it is Mutual the corporation that is seeking to defensively pierce its own corporate veil. Similar to Draw Tite, Inc., Mutual wants us to consider it and Casualty as a single company to be able to receive protection under an Indiana statute from possible financial liability. Similar to Draw Tite, Inc., Mutual as the parent company made the decision to have a subsidiary corporation.

---

**2.** For example, in its conclusions of law number five the trial court stated that "State Farm obtained valid written rejections...." R. 1341.

Following the Supreme Court's reasoning in *McQuade,* we conclude that insufficient grounds exist to disregard the corporate form established by having the two corporations of Mutual and Casualty. Therefore, we consider Mutual as the parent corporation to be a separate company from Casualty the subsidiary.

### SEPARATE REJECTION

Because Mutual replaced Casualty as the provider of coverage for the Tracer, Mutual did not get a separate written rejection by either of the Skrzypczaks after it started providing insurance coverage for the Tracer. Thus, the next issue becomes whether, pursuant to Indiana Code section 27–7–5–5, Mutual was required to obtain a separate written rejection of the underinsured motorist coverage for the Tracer.

Indiana Code section 27–7–5–2 applies only to insurance policies first issued after December 31, 1987. P.L. 391–1987(ss), § 4. Also, Indiana Code section 27–7–5–2(b) provides in relevant part: "[r]enewals of policies issued or delivered in this state which have undergone interim policy endorsement or amendment do not constitute newly issued or delivered policies for which the insurer is required to provide the coverages described in this section." Thus, the key issue is whether the Mutual policy is a new policy issued after December 31, 1987, or a renewal of a policy existing prior to this date.

We independently determine as a matter of law a statute's meaning and apply it to the facts of the case at bar. *Miller v. Walker,* 642 N.E.2d 1000, 1001 (Ind.Ct.App. 1994), *aff'd,* 655 N.E.2d 47 (Ind.1995). We follow several rules of statutory construction. First, we do not and may not interpret a statute that is facially clear and unambiguous. *Id.* Rather, we give the statute its plain and clear meaning. *Id.* at 1002. Additionally, when construing a statute, the legislature's definition of a word binds us. *Tucker v. State,* 646 N.E.2d 972, 975 (Ind.Ct.App. 1995). When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* Second, if a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Miller,* 642

N.E.2d at 1002. When doing so, we read an Act's statutes as a whole and strive to give effect to all of the provisions. *Id.*

Indiana Code section 27–7–5–2 can be read in conjunction with Indiana Code section 27–7–6–3 (West 1993). *Inman v. Farm Bureau Ins.,* 584 N.E.2d 567, 569 (Ind.Ct. App.1992), *trans. denied.* The Indiana Legislature defined "renewal" to mean

> the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the **same insurer** insuring the same insured, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term....

I.C. § 27–7–6–3 (emphasis added). *McQuade* is precedent for a determination that Mutual is not the **same insurer** as Casualty. 659 N.E.2d 1016. Thus, based on the legislative definition of the term "renewal," the Mutual policy was not a renewal of the Casualty policy. Therefore, the Mutual policy, originally issued on November 9, 1990, was a new policy within the meaning of Indiana Code section 27–7–5–2. And, this statute required Mutual to obtain a written rejection from the Skrzypczaks of the underinsured motorist coverage for the Tracer. Because Mutual did not obtain such a rejection, they were required to provide the Skrzypczaks with underinsured motorist coverage equal to their bodily injury liability limits of $100,000.00 per person and $300,000.00 per accident for the accident of October 1, 1993. Therefore, we reverse the trial court's judgment.

Because our decision that Casualty and Mutual are separate companies and that Mutual needed a separate written rejection is dispositive of this case, we do not need to address the third issue of whether Casualty's written rejection signed by only one of the named insureds satisfies the requirements of Indiana Code section 27–7–5–2.

We reverse.

CHEZEM and DARDEN, JJ., concur.