**In re the Matter of the COMMITMENT OF Elmore PEPPER,**

**COMMUNITY HOSPITALS OF INDIANA, INC., Appellant–Petitioner,**

v.

**John R. VON ARX as Marion County Auditor, Appellee–Respondent.**

No. 49A04–9805–CV–242.

Court of Appeals of Indiana.

Oct. 9, 1998.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Phyllis J. Garrison, Community Hospitals of Indiana, Inc., Indianapolis, for Appellant–Petitioner.

Andrew P. Seiwert, Marion County Auditor's Office, Office of Corporation Counsel, Indianapolis, for Appellee–Respondent.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Community Hospitals of Indiana, Inc. (Community) appeals the denial of court ordered payment from the Marion County General Fund pursuant to Ind.Code § 12–26–10–4 for the temporary hospitalization of Elmore Pepper (Pepper), a mentally ill individual.

We reverse.

### ISSUES

Two issues are raised for our review, which we restate as:

1. Whether Community should be reimbursed from the Marion County General Fund, pursuant to Ind.Code § 12–26–10–4, for the temporary care of Pepper, a mentally ill individual under involuntary commitment, pending admission to a permanent mental facility.

2. Whether the trial court abused its discretion by failing to award Community reimbursement from the Marion County General Fund for its care of Pepper pending admission to a mental facility, for which the Division of Family and Children refused to pay.

### FACTS AND PROCEDURAL HISTORY

Elmore Pepper is a sixty-seven year old man who suffers from chronic paranoid schizophrenia. On October 5, 1993, Tri-County Mental Health Center, believing Pepper to be dangerous to himself and others, filed a petition for his involuntary commitment. At the time of the petition, Pepper was in a group home at Community Hospitals of Indianapolis. On October 19, 1993, the Marion County Municipal Court Three, Mental Health Division, entered an order committing Pepper to Community Hospital North, as an inpatient, until more suitable placement could be found. At the time of his commitment, Pepper was a Medicaid recipient.

Pepper remained an inpatient at Community Hospital North from September 14, 1993, until January 28, 1994, when he was discharged to Madison State Hospital. As Pepper was indigent, and unable to pay for his care at Community pending admission to Madison State Hospital, financial assistance was sought from Medicaid. Medicaid agreed to pay for sixty-five days of Pepper's care at Community (October 19, 1993 until November 18, 1993). However, Medicaid refused to pay for any additional days after November 18, 1993 on the grounds that Pepper was sufficiently stabilized, his stay was no longer medically necessary, and he could have been transferred, but discharge was delayed because of a lack of beds at Madison State Hospital. On March 15, 1994, Community appealed to the Indiana Family and Social Services Administration (IFSSA) for judicial review of the denial of Medicaid payment to Community. The appeal was denied by IFSSA on September 28, 1994. On January 31, 1995, that decision of the administrative law judge was affirmed by the IFSSA Director.

On November 1, 1996, Community joined the Marion County Auditor and filed a petition with the Marion County Superior Court, Mental Health Division, for court ordered payment pursuant to IND. CODE 12–26–10–4, seeking payment from the Marion County General Fund for the care of Elmore Pepper from November 19, 1993 until January 28, 1994. On March 17, 1997, argument was heard on Community's petition for court ordered payment and the Marion County Superior Court, Probate Division took the matter under advisement pending the outcome of a claim submitted to the Washington township trustee. On January 16, 1998, the trial court denied Community's petition for court ordered payment from the Marion County General Fund, finding that Community should have pursued a claim against the township

**256** ▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

trustee. This is an appeal from that judgment.

## DISCUSSION AND DECISION

### Standard of Review

▮▮▮ When reviewing a claim that the trial court improperly applied statutory guidelines, we must decide whether the trial court's findings and judgment constitutes an abuse of discretion. In this analysis, we consider only the evidence most favorable to the prevailing party, and we neither reweigh the evidence nor reassess witness credibility. *Dwyer v. Wynkoop*, 684 N.E.2d 245, 250 (Ind.Ct.App.1997). Reversal is warranted only upon a showing of a manifest abuse of discretion, that is, when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, together with any reasonable inferences arising therefrom. *Id.* An abuse of discretion also occurs when the trial court has misinterpreted the law or disregards evidence of factors listed in the controlling statute. *Krasowski v. Krasowski*, 691 N.E.2d 469, 472 (Ind.Ct.App.1998).

### Care Pending Admission

▮▮▮ Community Hospitals of Indiana, Inc. contends that it is entitled to reimbursement from the Marion County General Fund for the care of Elmore Pepper pending his admission to Madison State Hospital. Community argues that it sufficiently satisfied the statutory requirements to entitle it to payment from the Marion County General Fund. We agree.

However, the Marion County Auditor (Auditor) contends that Community did not satisfy the requirement of Ind.Code § 12–26–10–4 that it seek payment from all enumerated sources prior to seeking payment from the county general fund. Specifically, the Auditor argues that Ind.Code § 12–26–10–4 places an affirmative duty upon Community to seek payment from all entities listed in the statute prior to seeking financial assistance from the Marion County general fund. Furthermore, the Marion County Superior Court found that pursuant to the statute, Community should have pursued a claim against the township trustee instead of seeking payment from the general fund. We do not interpret the statute in this manner.

▮▮▮ The parties have not cited, and our independent research does not reveal any cases dealing with the meaning of Ind. Code § 12–26–10–4. Thus, this case presents an issue of first impression. The facts relevant to the resolution of this appeal are not in dispute. Therefore, we must determine whether the Superior Court's interpretation of Ind.Code § 12–26–10–4 is correct. When construing a statute, we are guided by several rules of statutory construction. First, when a statute is clear and unambiguous on its face, the court need not, and indeed must not, interpret the statute. *State v. Livengood by Livengood*, 688 N.E.2d 189, 193 (Ind.Ct.App.1997). Rather, we give the statute its plain and clear meaning. *Skrzypczak v. State Farm Mut. Auto. Ins.*, 668 N.E.2d 291, 295 (Ind.Ct.App.1996). Additionally, when construing a statute, the legislature's definition of a word binds us. When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Ashlin Transp. Servs., Inc. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 167 (Ind.Ct.App.1994). If a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Skrzypczak*, 668 N.E.2d at 295. In so doing, we read an Act's section as a whole and strive to give effect to all of the provisions, *id.*, so that no part is held meaningless if it can be reconciled with the rest of the statute. *JKB, Sr. v. Armour Pharmaceutical Co.*, 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *reh'g denied, trans. denied.* We presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Walling v. Appel Service Co., Inc.*, 641 N.E.2d 647, 651 (Ind.Ct.App.1994).

Pending admission to a state institution, the responsibility for an involuntarily committed patient's care is governed by Ind. Code § 12–26–10–1 et seq. Ind.Code § 12–26–10–4 reads:

If the comfort and the care of an individual are not otherwise provided:

(1) from the individual's estate;

(2) by the individual's relatives or friends; or

(3) through the financial assistance from the division of family and children or a county office; the court may order the assistance furnished and paid for out of the general fund of the county.

The Marion County Auditor urges us to read a mandatory duty into this statute in order for Community to seek financial assistance from the enumerated sources in the statute. Specifically, the Auditor argues that use of the word "if" creates a condition precedent imposing a duty on Community to seek payment from the enumerated sources prior to seeking payment from the general fund. However, the plain and ordinary meaning of the statute does not place this duty on Community. Webster's does in fact define "if" to mean "in the event that [or] condition." Webster's Third New International Dictionary 1124 (1976). Furthermore, "provided" is defined as "supplied, furnished, or equipped with necessaries." *Id.* at 1827. Applying these definitions, we find that there is no mandatory language creating a duty in Ind.Code § 12–26–10–4. Rather, the statutory language in question creates a condition precedent for financial assistance from the general fund only if aid is not otherwise supplied or furnished by Pepper's relatives, friends, the division of family and children, or a county department. If the legislature had intended for Ind.Code § 12–26–10–4 to create an obligation to seek payment from certain entities prior to receiving financial assistance from the general fund, it would have included mandatory language in the statute. Thus, the plain and clear meaning of the statute reveals no affirmative duty on the part of Community to seek financial assistance from Pepper's relatives, friends, the division of family and children, or a county department prior to receiving payment from the general fund. We simply do not interpret the statute to create an affirmative duty and we will not usurp the Legislature's authority by creating such a mandatory duty here.

Ind.Code § 12–26–10–4 does, however, create an implied duty for Community to make a reasonable effort to investigate the alternative sources of reimbursement enumerated in the statute for the care of Pepper prior to seeking payment from the general fund. We find that Community did make reasonable efforts to satisfy this requirement. However, the Marion County Auditor contends that the record does not support Community's contention that it made a reasonable effort to collect from Pepper, Pepper's relatives, friends, Medicaid, or a county office. Specifically, the Auditor argues that Community's statements are made without citation to the record because there is no evidence in the record to reflect that Community made any attempt to obtain payment from Pepper's relatives or friends. Matters outside the record cannot be considered by the court on appeal. We must decide the case on the record before us, and cannot speculate as to the actual facts of a case. *Zapffe v. Srbeny,* 587 N.E.2d 177, 180 (Ind. Ct.App.1992).

However, the record reflects that Community made an effort to obtain financial assistance from all enumerated sources pursuant to Ind.Code § 12–26–10–4. First, Community indicated in its "Petition for Court Ordered Payment" that Pepper had no relatives or friends able or willing to pay for his care and comfort during his stay at Community, pending admission to a state institution. R. 53. Second, Community indicated in the record that Pepper was indigent as defined by the Medicaid statute and regulations. R. 59. In order to be eligible for the Medicaid program, an individual must be indigent. Ind. Code § 12–15–2 et seq. Therefore, Pepper had no estate from which payment could be made for his care and comfort at Community. Third, Community filed a claim with the State of Indiana Family and Social Services Administration, Division of Family and Children to obtain payment for services rendered to Pepper from September 14, 1993 through January 28, 1994. Medicaid approved payment from September 14, 1993 through November 18, 1993, but denied further payment because Pepper's stay at Community was not medically necessary and he would have been

more appropriately placed in a long term care facility after November 18, 1993. However, there were no beds available at a long term care state institution until January 28, 1993. Next, Community challenged Medicaid's denial of payments to the Indiana Division of Family and Social Services, which affirmed Medicaid's decision. Community then appealed to the Marion County Superior Court on Judicial Review, which upheld the agency decision. Thus, Community attempted to obtain payment from the division of family and children for care and comfort for Pepper after November 18, 1993. Finally, on January 16, 1998, following a hearing on March 17, 1997, the Marion County Superior Court, Probate Division, denied Community's petition for court ordered payment based on a finding that Community should have pursued a claim against the township trustee. However, the record indicates that on February 24, 1997, Community sent a letter via certified mail to the Washington Township trustee "request[ing] assistance from your office for the medical services rendered to Elmore pepper from November 18, 1993, to January 28, 1994." R. 110. We conclude that Community made reasonable efforts to obtain payment from all enumerated entities under Ind.Code § 12–26–10–4.

■ Community further contends that because it is not an entity listed in Ind.Code § 12–26–10–4, it may not be held responsible for the cost of assisting Pepper pending admission to a state facility. We find *In re the Commitment of A.N.B.*, 614 N.E.2d 563, (Ind.Ct.App.1993), very instructive on this issue. In that case, the Johnson County Circuit Court ordered the Indiana Division of Mental Health to assume all financial responsibility for the care and maintenance of an involuntarily committed child. *Id.* We reversed the trial court and held that under Ind.Code § 12–26–10–4, the Indiana Division of Health was simply not one of the entities that could be held responsible for the cost of assisting a mentally ill child who had been involuntarily committed pending admission to a state facility. We further held that "Johnson County [was] liable for the cost of [the patient's] care and comfort pending admission only if that aid is not otherwise provided by [the patient's] relatives, friends, the divi-

sion of family and children, or a county department." *Id.* at 566. Thus, by analogy, Community is not one of the entities that may be held responsible for the cost of assisting Pepper pending his admission to a state facility pursuant to Ind.Code 12–26–10–4. On the other hand, the general fund is an entity that may be held responsible for the cost of care and comfort of Pepper pending admission to a state facility. Although Ind. Code § 12–26–10–4 does not place a duty of financial responsibility upon Community, it does place a duty upon the general fund to provide financial assistance for the care and comfort of Pepper. Furthermore, the record adequately indicates that financial assistance was not otherwise provided by Pepper's relatives, friends, estate, the division of family and children or a county office.

### Abuse of Discretion

■ Community contends that the trial court abused its discretion by failing to order payment from the Marion County general fund for the care of Pepper. We agree that the trial court abused its discretion by misinterpreting Ind.Code § 12–26–10–4.

The trial court misinterpreted the law by denying Community's petition for court ordered payment pursuant to Ind.Code § 12–26–10–4, based on a finding that Community should have pursued a claim against the township trustee. However, Ind.Code § 12–26–10–4 does not list a township trustee as an entity from whom Community needed to make a reasonable effort to obtain financial assistance. Thus, the trial court improperly ordered Community to pursue a claim against the township trustee because Community could seek payment from the general fund without attempting to obtain financial assistance from the township trustee. Thus, based on the evidence and our interpretation of the statute, the trial court's decision to deny Community payment from the general fund is clearly against the logic and effect of the facts and circumstances that were before the trial court, and should be reversed for abuse of discretion.

### CONCLUSION

Community made a reasonable effort to obtain financial assistance from all sources

specifically enumerated in Ind.Code § 12–26–10–4. Moreover, the trial court abused its discretion by misinterpreting the statute and disregarding the evidence that Community met the implied statutory duty to make a reasonable effort to seek payment from alternative payers prior to making a claim for financial assistance from the Marion County general fund. Therefore, we must reverse and remand with instructions that the trial court's denial of court ordered payment be vacated and that Ind.Code § 12–26–10–4 be interpreted in accordance with this opinion.

Reversed.

GARRARD and RUCKER, JJ., concur.