STATE FARM FIRE & CASUALTY
COMPANY, Appellant–
Defendant,

v.

James R. GARRETT and Yancey W.
Lederman, Individually and as Execu-
tors of The Estate of Barbara A. Gar-
rett, Deceased, and Steven W. Jordan,
Appellees–Plaintiffs.

No. 41A05–0112–CV–525.

Court of Appeals of Indiana.

Feb. 12, 2003.

Robert A. Durham, Indianapolis, IN, Attorney for Appellant.

George Hoffman, James R. Admire, Jones Hoffman & Admire, Franklin, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

State Farm Fire and Casualty Company ("State Farm") appeals the trial court's denial of its motion for summary judgment and the trial court's grant of summary judgment in favor of James R. Garrett ("James") and Yancey W. Lederman,[1] individually and as Executors of the Estate of Barbara A. Garrett (collectively referred to as the "Estate").[2] State Farm raises

---

1. Lederman is no longer serving as an executor of the Estate of Barbara A. Garrett.

2. This case came before us as an interlocutory appeal. We accepted jurisdiction pursuant to Ind. Appellate Rule 14(B)(3).

one issue, which we restate as whether the trial court erred by denying its motion for summary judgment and by granting summary judgment in favor of the Estate because James is not entitled to recover uninsured motorist benefits for the death of his wife where he expressly rejected uninsured motorist coverage at the time he applied for the insurance policy. We affirm.

The relevant facts follow. On January 17, 1986, James applied for a Personal Liability Umbrella Policy ("Umbrella Policy") from State Farm. The Umbrella Policy provided coverage for liability beyond that provided by underlying automobile liability and homeowners policies. At that time and all other times relevant to this action, James and Barbara were married. The application form for the Umbrella Policy called for the name of the spouse of the applicant and Barbara's name was written onto the application. Only James signed the application. The application form contained a section entitled "REJECTION OF UNINSURED MOTORISTS COVERAGE" that provided:

> In keeping with the provisions of the laws of my state, I have been offered the opportunity to purchase Uninsured Motorist's coverage, and I hereby reject Uninsured Motorist's coverage as a part of this application.

Appellant's Appendix at 91.

James alone signed this portion of the application. The Umbrella Policy that was issued designated James as "Named Insured" on the Declarations Page. *Id.* The definitions section of the policy contained the following provision:

> "named insured" means the person named in the Declarations and the spouse.

*Id.* at 74. The Umbrella Policy was renewed annually with the last renewal effective on January 17, 1999. On January 18, 1999, Barbara was involved in an automobile accident with an uninsured motorist, and died as a result of her injuries.

James presented a claim to State Farm for uninsured motorist benefits under the Umbrella Policy by reason of Barbara's death. State Farm then filed a declaratory judgment action seeking a determination that, pursuant to James's express rejection of uninsured motorist coverage, the Umbrella Policy did not include uninsured motorist coverage. In response, the Estate filed a counterclaim, which sought a judgment declaring that State Farm was required to provide uninsured motorist benefits under the Umbrella Policy. State Farm filed a motion for summary judgment, and the Estate responded with its own motion for summary judgment. After conducting a hearing on State Farm's motion for summary judgment, the trial court denied State Farm's motion and granted summary judgment to the Estate. Specifically, the trial court found that "uninsured motorist coverage as mandatory under the provisions of Indiana Code 27–7–5–2 was not rejected as to the named insured, [Barbara]." *Id.* at 18.

The sole issue raised is whether the trial court erred by denying State Farm's motion for summary judgment and by granting summary judgment to the Estate because James is not entitled to recover uninsured motorist benefits for the death of Barbara where he expressly rejected uninsured motorist coverage at the time he applied for the insurance policy. On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). Once the moving party

has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997).

Where a trial court enters findings of fact and conclusions thereon in granting the motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

Here, State Farm argues that James is not entitled to uninsured motorist benefits for the death of Barbara because he rejected uninsured motorist coverage on behalf of himself and Barbara at the time the Umbrella Policy was issued. This argument requires us to interpret Ind.Code § 27–7–5–2, which governs uninsured motorist coverage. When the Umbrella Policy was issued, Ind.Code § 27–7–5–2 provided, in relevant part, that:

(a) The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

\* \* \* \* \*

(2) in limits for bodily injury or death not less than those set forth in IC 9–25–4–5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured and underinsured motorist coverages must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in

the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured.

\* \* \* \* \*

(b) The named insured of an automobile or motor vehicle liability policy has the right, in writing, to:

    (1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or

    (2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone, if the insurer provides the coverage not rejected separately from the coverage rejected.

The interpretation of a statute is a question of law, which is reserved for the courts. *Skrzypczak v. State Farm Mut. Auto. Ins. Co.*, 668 N.E.2d 291, 295 (Ind. Ct.App.1996). When interpreting a statute, we follow several rules of statutory construction. First, we do not interpret a statute that is facially clear and unambiguous. *Id.* Rather, we give the statute its plain and clear meaning. *Id.* Second, if a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Id.* In so doing, we read a statute as a whole and strive to give effect to all of the provisions. *Id.*

■■■■ Our supreme court has held that Ind.Code § 27–7–5–2 is a mandatory coverage, full-recovery, remedial statute. *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind.1999). As such, it is directed at insurers operating within Indiana and its provisions are to be "considered a part of every automobile liability policy the same as if written therein." *Id.* Moreover, "[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law." *Id.; see also Veness v. Midland Risk Ins. Co.*, 732 N.E.2d 209, 212 (Ind.Ct.App.2000). Moreover, because the uninsured motorist statute is remedial in nature, we must liberally construe the statute in favor of the insured. *West Bend Mut. v. Keaton*, 755 N.E.2d 652, 655 (Ind. Ct.App.2001), *trans. denied.* Indeed, the main purpose behind the uninsured motorist statute is to place an injured insured "in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the financial responsibility act." *Id.* "Persons defined as 'insureds' under the liability section of an insurance policy are those for whom the legislature intended uninsured motorist benefits." *Connell v. Am. Underwriters, Inc.*, 453 N.E.2d 1028, 1030 (Ind.Ct.App.1983).

Here, Barbara was a named insured under the Umbrella Policy issued by State Farm. Therefore, Barbara is entitled to uninsured motorist coverage unless she expressly rejected such coverage in the manner provided for by law. The parties do not dispute that Barbara never personally rejected uninsured motorist coverage under the Umbrella Policy. Thus, the question becomes whether James's written rejection of uninsured motorist coverage is sufficient to reject such coverage on behalf of Barbara. The issue of whether one insured can reject uninsured motorist coverage on behalf of all other insureds covered by an insurance policy is one of first impression in Indiana.

State Farm submits the following three arguments. First, State Farm contends that because any recovery for Barbara's death will inure to the direct benefit of James, and not the Estate, and because James expressly rejected the uninsured motorist coverage at the time State Farm

issued the Umbrella Policy, James should not now be able to receive the benefit of uninsured motorist coverage. Second, State Farm maintains that James's rejection of the uninsured motorist coverage also served as a rejection of such coverage on behalf of Barbara because of an agency relationship. Lastly, State Farm argues that a legislative amendment to the statute indicates that James's signature declining coverage was sufficient to reject uninsured motorist coverage on behalf of himself and Barbara under Ind.Code § 27–7–5–2. We address each of these arguments below.

### A.

■ First, State Farm argues that because any recovery for Barbara's death will inure to the direct benefit of James, and not the Estate, and because James expressly rejected uninsured motorist coverage at the time State Farm issued the Umbrella Policy, James should not now be able to receive the benefit of uninsured motorist coverage. State Farm contends that the Umbrella Policy does not cover uninsured motorist coverage because James expressly rejected such coverage at the time he applied for the policy. Accordingly, State Farm maintains, the trial court erroneously granted summary judgment in favor of the Estate on the basis of uninsured motorist coverage because "[a]n insured is not entitled to the benefit of coverage he clearly intended to reject." Appellant's Brief at 8 (citations omitted).

In making this argument, State Farm reasons that James is making a claim for wrongful death damages arising from the death of Barbara and the "damages will inure to the exclusive benefit of [James] and any death creditor beneficiaries."[3] *Id.* As such, State Farm asserts, James will receive the benefits of uninsured motorist coverage under the Umbrella Policy despite his express rejection of such coverage. However, at the time that James applied for the Umbrella Policy with State Farm, he rejected uninsured motorist coverage on behalf of himself. Thus, clearly, if this were a case where James had been involved in an accident with an uninsured motorist and was seeking uninsured motorist benefits resulting from that accident, James would not be entitled to recover uninsured motorist coverage because of his written rejection of such coverage. *See, e.g., State Auto Ins. Co. v. Shannon,* 769

---

**3.** Neither party has provided us with the terms of uninsured motorists coverage that would have been included in the policy if written with such coverage or of any such coverage that was a part of any underlying policy. The claim of the Estate is not for wrongful death; it is for what is due under the contract of insurance. What is due and to whom it is due, would, at least to some extent, depend upon the terms of the contract, which might well lead to an inquiry as to for whose benefit a wrongful death action could be brought by reason of the death of Barbara. Resolution of such questions will be the subject of what comes after our decision in this case. Ind.Code § 34–23–1–1, which governs wrongful death actions, provides in part that:

When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

N.E.2d 228, 232 (Ind.Ct.App.2002), *trans. denied.*

However, in this case, Barbara was the insured involved in the fatal accident with the uninsured motorist. In determining whether uninsured motorist coverage applies to Barbara's accident, we must examine whether Barbara rejected such coverage. In so doing, it is irrelevant to our analysis that James, the insured who expressly and unequivocally rejected uninsured motorist coverage in the Umbrella Policy, may recover the benefits of Barbara's uninsured motorist coverage. Rather, we must focus our attention on whether Barbara was entitled to uninsured motorist coverage under the Umbrella Policy. State Farm chose to designate Barbara as a named insured in the Umbrella Policy. That designation brought her within the reach of Ind.Code § 27–7–5–2 to "the named insured." Accordingly, we find State Farm's argument unpersuasive. We now address whether James's written rejection of uninsured motorist coverage served to reject that coverage for Barbara.

### B.

State Farm next contends that James's rejection of uninsured motorist coverage also served as a rejection of such coverage on behalf of Barbara because of an agency relationship. The trial court found that James's written rejection of uninsured motorist coverage did not constitute a rejection on behalf of Barbara because there was no agency relationship between James and Barbara. Indeed, the trial court determined that "no facts have been presented in the summary judgment proceeding from which an agency relationship may be found." Appellant's Appendix at 18.

State Farm argues that this finding was erroneous because James had authority to sign the rejection on behalf of Barbara. To support its argument, State Farm asserts that James signed the Umbrella Policy on behalf of Barbara. Thus, State Farm reasons that:

> If [James] did not have authority to sign the rejection on behalf of [Barbara], then there is no way to argue that he had authority to sign the application on her behalf.... If [James] was authorized to sign on [Barbara's] behalf, then the coverage was rejected. If he was not authorized to sign on her behalf, then there was no policy available to [Barbara.]

Appellant's Brief at 9. The Estate counters that James's "written rejection of uninsured motorist coverage is ineffective to waive coverage for [Barbara] where [Ind. Code § 27–7–5–2] required '*the* named insured' to reject coverage." Appellee's Brief at 6 (emphasis in original). Rather, the Estate maintains, because Barbara never expressly declined uninsured motorist coverage, she is entitled to such coverage as a matter of law. The Estate further argues that at the time State Farm issued the Umbrella Policy, it was State Farm's policy to allow one insurer to apply for and procure insurance coverage on behalf of other insureds within the same insurance policy. However, "once insurance coverage has been procured, Indiana law defines the contours around which certain insurance coverage may be rejected." *Id.* at 16. In particular, the Estate contends that Ind.Code § 27–7–5–2 requires the insured to reject uninsured motorist coverage in writing. We find the Estate's reasoning more persuasive.

■ Initially, we observe that "[m]arriage does not in itself create an agency relationship between spouses; however, the marital relationship is one of the facts and circumstances to be considered in determining the existence of an agency relationship." *Bradford v. Bentonville Farm Supply, Inc.,* 510 N.E.2d 745, 747 (Ind.Ct.

App.1987) (*quoting Moehlenkamp v. Shatz*, 396 N.E.2d 433 (Ind.Ct.App.1979)). Accordingly, the mere fact that James and Barbara were married does not establish an agency relationship.

█ In the present case, State Farm argues that the Umbrella Policy itself created an agency relationship between James and Barbara. In fact, to support its argument that James's rejection of uninsured motorist coverage under the Umbrella Policy served to decline uninsured motorist coverage on behalf of Barbara, State Farm relies upon *Employers Ins. of Wausau v. Stopher*, 155 F.3d 892 (7th Cir.1998) (applying Indiana law), *reh'g denied*. There, the Seventh Circuit confronted the issue of whether a parent corporation, Nucor Corporation ("Nucor"), had the authority to reject uninsured motorist coverage on behalf of two subsidiaries, Nucor Fasteners Sales Corporation ("Nucor Fasteners") and Vulcraft Carrier Corporation ("Vulcraft"). *Id.* at 896. In *Stopher*, the insured, an employee of Nucor Fasteners, was involved in an automobile accident while he was driving a truck owned by Vulcraft. *Id.* The insured asserted a claim for uninsured motorist benefits under an insurance policy issued to Nucor. *Id.* Nucor Fasteners and Vulcraft were listed as additional named insureds under the insurance policy issued to Nucor. *Id.* Prior to the accident, Nucor had executed a form rejecting uninsured and underinsured motorist coverage. *Id.* However, neither Nucor Fasteners nor Vulcraft signed a rejection of uninsured motorist coverage.

At trial, the insured argued that he was entitled to underinsured motorist coverage under the Nucor policy because Ind.Code § 27–7–5–2 required that the rejection be signed by each named insured. *Id.* However, the Seventh Circuit held that:

It . . . is inconsistent for the [insured] to argue that Nucor could obtain the policy on behalf of Nucor Fasteners and Vulcraft, but that Nucor could not bind Nucor Fasteners and Vulcraft with respect to one aspect of the policy—the rejection of UM/UIM coverage. Accordingly, Nucor had the authority to reject UM/UIM coverage on behalf of the additional named insureds.

*Id.* at 896–897.

However, the insurance policy in *Stopher* contained an "Additional Named Insured Endorsement" provision, which provided that:

A. The named insured shown in the Declarations is authorized to act for each additional Named Insured listed in all matters pertaining to this insurance including, but not limited to, receipt of:

a. Notice of cancellation;

b. Any returned premium;

c. Any dividends which we may declare.

\* \* \* \* \*

D. This endorsement is being placed on the policy only because the Named Insured shown in the Declarations has told us that it and the additional Named Insured's interest listed below are owned or financially controlled by the same interest.

*Id.* at 896. Such a provision does not exist in the Umbrella Policy issued by State Farm to James and Barbara. Here, Barbara became a named insured by policy definition because she was James's spouse. Thus, *Stopher* is readily distinguishable from the case at hand. Accordingly, the trial court did not err by denying State Farm's motion for summary judgment and by granting summary judgment in favor of the Estate on this issue.

### C.

■ Lastly, State Farm argues that a legislative amendment to the statute indicates that James's signature declining coverage was sufficient to reject uninsured motorist coverage on behalf of himself and Barbara under Ind.Code § 27–7–5–2. At the time State Farm issued the Umbrella Policy to James and Barbara, Ind.Code § 27–7–5–2 provided, in pertinent part, that: "The named insured of an automobile or motor vehicle liability policy has the right, in writing, to: (1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section...." Ind.Code § 27–7–5–2 (1982). However, the legislature amended Ind.Code § 27–7–5–2(b) in 1999 ("1999 Amendment") as follows: "Any named insured of an automobile or motor vehicle liability policy has the right, on behalf of all other named insureds and all other insureds, in writing, to: (1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section...." State Farm argues that the 1999 Amendment was merely an attempt by the legislature to clarify, not change, the language of Ind.Code § 27–7–5–2(b). The rules of statutory construction do not support State Farm's contention.

■■ A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has changed. *Bennett v. Ind. Life & Health Ins. Guar. Ass'n*, 688 N.E.2d 171, 179 (Ind.Ct.App.1997), *trans. denied.* Indeed, such an amendment raises a presumption that the legislature intended to change the law unless it clearly appears that the legislature passed the amendment to express the original intention of the law more clearly. *Id.*

To support its argument that the 1999 Amendment was merely a clarification of, and not a change to, Ind.Code § 27–7–5–2, State Farm asserts that the legislature enacted the 1999 Amendment in response to our 1996 decision in *Skrzypczak*, 668 N.E.2d at 291 (discussing the rejection of underinsured motorist coverage). There, an automobile insurer sought a judgment declaring that the insureds did not have underinsured motorist coverage because they had rejected it in writing on a previous insurance policy issued by the automobile insurer's wholly-owned subsidiary. *Id.* at 292. One of the three issues before the *Skrzypczak* court, and the only one pertinent to our analysis in this case, was whether "a signed rejection by only one of two named policy holders satisfies the statutory requirements" of Ind.Code § 27–7–5–2. *Id.* However, because our resolution of the two other issues presented by the appellants in *Skrzypczak* was dispositive to the outcome of the case, we did not address this issue. *Id.* at 294.

■ Thus, even assuming, as State Farm contends, that the 1999 Amendment was a legislative response to *Skrzypczak*, there is nothing in either the text of the amended statute or its legislative history to indicate that the legislature enacted the 1999 Amendment to clarify the original intention behind Ind.Code § 27–7–5–2, rather than to change the existing law. In *Skrzypczak*, we expressly declined to address whether a written rejection signed by only one of the named insureds satisfied the requirements of Ind.Code § 27–7–5–2. *Id.* Thus, the legislature's subsequent amendment of the statute, which provided that any named insured could reject coverage on behalf of all insureds, does not necessarily denote a clarification of Ind.Code § 27–7–5–2. Rather, one could certainly argue that the 1999 Amendment demonstrates the legislature's

intent to change the existing law. Accordingly, State Farm's assertion that the 1999 Amendment "was passed in order to express the legislature's original intention more clearly," without more, is insufficient to rebut the presumption that the legislature intended to change the law.[4] Appellant's Brief at 14; see, e.g., Bennett, 688 N.E.2d at 179.

As further proof that the legislature clarified, as opposed to changed, the language of Ind.Code § 27–7–5–2 by enacting the 1999 Amendment, State Farm asserts that "[i]nterpreting I.C. 27–7–5–2 in its pre–1999 form to require every named insured to reject uninsured motorist coverage ignores the factual situation in which the statute operates." Appellant's Brief at 19. In particular, State Farm argues that because insurance policies customarily cover entire family units, requiring every named insured to sign the liability policy declining uninsured motorist coverage is inconsistent with the way insurance is purchased. State Farm further maintains that if each named insured were given the right to select insurance coverage for himself or herself, it would effectively eliminate the possibility of covering multiple people under one insurance policy unless they could all agree upon the coverage to be selected. However, none of these arguments support State Farm's contention that the 1999 Amendment was enacted to clarify the meaning of Ind.Code § 27–7–5–2. In fact, under the same reasoning, just the opposite may be true. Specifically, the legislature may have enacted the 1999 Amendment to Ind.Code § 27–7–5–2 to change the law to more accurately reflect the "real world set of circumstances" in which insurance is sold. Id.

Accordingly, the trial court did not erroneously deny State Farm's motion for summary judgment and grant summary judgment in favor of the Estate based upon its finding that Barbara had uninsured motorist coverage at the time of her death. For the foregoing reasons, we affirm the trial court's denial of State Farm's motion for summary judgment and its grant of summary judgment in favor of the Estate.

Affirmed.

FRIEDLANDER, J., and NAJAM, J. concur.

---

4. State Farm additionally argues that:

The votes taken on [the 1999 Amendment] provide further evidence that it was a clarification, not a change. The amendment initially passed the Senate 47–0. It was later incorporated into a House bill addressing various insurance matters. This combined bill passed the Senate 43–4 and the House 89–5. The lopsided votes are consistent with the notion that the legislature was clarifying, not changing, the meaning of the statute.

Appellant's Brief at 17–18 (internal citations omitted). However, State Farm has offered no legal authority for this proposition. Accordingly, we do not address this argument.