Charles W. MURRAY, Appellant–Plaintiff,

v.

HAMILTON COUNTY SHERIFF'S DE-PARTMENT; Hamilton County Sheriff L. Joe Cook, in his Official Capacity; and the Hamilton County Sheriff's Merit Board, Appellees–Defendants.

No. 29A04–9610–CV–411.

Court of Appeals of Indiana.

Dec. 29, 1997.

Virginia Dill McCarty, Stephen M. Terrell, Indianapolis, for Appellant–Plaintiff.

Michael A. Howard, Bruce A. Boje, Noblesville, for Appellees–Defendants.

## OPINION

CHEZEM, Judge.

### Case Summary

Appellant–Plaintiff, Charles Murray ("Murray"), appeals the trial court's order granting summary judgment in favor of Appellees–Defendants, Hamilton County Sheriff's Department ("Department"), Hamilton County Sheriff Joe Cook ("Cook"), in his official capacity, and the Hamilton County Sheriff's Merit Board ("Board"), (collectively, "Hamilton"). We reverse in part, and affirm in part.[1]

### Issues

Murray presents essentially two issues which we rephrase as follows:

I. Whether Ind.Code § 36–8–10–10, the sheriff's merit law ("merit law"), permits the Board to create temporary administrative ranks to which officers are (a) appointed at the will of the Sheriff and/or his Board without competition; and (b) returned to their prior permanent rank at

---

1. In addition, we deny the petition for oral argument.

the will of the Sheriff and/or Board at the conclusion of the appointment; and,

II. Whether the merit law imposes a clear legal duty upon the Sheriff and the Board to follow the promotional procedures and qualifications mandated in Ind. Code § 36–8–10–10 in promoting a retiring Sheriff pursuant to Ind.Code § 36–8–10–8, or whether the Board may adopt a procedure under Ind.Code § 36–8–10–8 which does not involve the competitive testing procedures under Ind.Code § 36–8–10–10.

*Facts and Procedural History*

The Board, created pursuant to Ind.Code § 36–8–10, adopted rules for the Department in 1986. These rules were later amended. The Board adopted a merit promotion procedure for all the ranks above Merit Deputy, including Sergeant, Lieutenant, and Captain. The competitive procedure involved the consideration of a written examination score, a service rating (including an interview), length of service, and certain minimum requirements. The rules provided: "The eligible employee who makes the highest grade consisting of the total from the written examination, the service rating, and the length of service shall be promoted to the vacancy." (R. 182–83).

Traditionally, the highest levels of command, in descending order, were Sheriff, Chief Deputy Sheriff, and Captain. However, on February 22, 1992, Sheriff R. Daniel Stevens ("Stevens") requested to the Board a change in the ranks of the Department. He asked that the position of Division Commander be added as a temporary administrative position appointed by the Sheriff and answerable to the Sheriff or Chief Deputy. A Division Commander would be responsible for performance of personnel assigned to his or her division and would be compensated at the same pay grade as a Captain. The Board accepted the Division Commander proposal.

Murray had been a police officer since 1978. He was promoted via the merit system to Sergeant in 1980, and to Lieutenant in 1985. Since his 1985 promotion, Murray has been eligible to apply and compete for a promotion to the rank of Merit Captain. Shortly after the Board accepted the Division Commander idea, Stevens recommended that Murray be appointed to the position of Division Commander.

In January of 1993, the Board passed a resolution proposed by Stevens, which provided for the promotion of a sheriff to a rank within the Department after leaving office. The resolution recognized that it would be unfair for deputies of the Department to compete with the sheriff in the established promotion procedures because the sheriff had been intimately involved in the structure, development, criteria, conditions, and requirements for the promotion test. In the resolution, the Board noted that it was necessary to provide promotion procedures for the sheriff that did not discriminate against him or other members of the Department. The resolution amended the rules of the Board to establish a promotion procedure for the sheriff, which included both objective and subjective criteria.

On May 6, 1994, Stevens issued an order requiring that promotions to Sergeant and Lieutenant be conducted by written announcement of the promotion process, testing, and keeping eligibility lists of successful applicants. The order did not apply to Captain or Division Commander promotions.

In November of 1994, then-Captain Cook was elected Sheriff. Former Sheriff Stevens was then promoted—as per his own request and accompanying application—by the Board to the rank of Captain, effective January 1, 1995.[2] Also around that same time, Cook informed Murray that he would be reinstated to his previous rank of Lieutenant once Cook officially took office. Murray received neither written notice of cause for his demotion nor a pre-demotion hearing. Instead, the Board complied with Cook's recommendation that Murray be demoted. In the meantime, others were promoted to Division Commander. In March of 1995, Cook stated in a newspaper article that a sheriff should have an opportunity to put his own administration in place and that he thought the Board guidelines gave the sheriff the authority to promote or demote as he saw fit.

2. Prior to his term as sheriff, Stevens had been a Merit Deputy.

In March of 1995, Murray filed a mandate action, alleging that Hamilton violated Indiana's statutory merit law. In particular, he asserted that the temporary Division Commander position and the promotion procedures for outgoing sheriffs were in contravention of the merit law. As such, he asked for a mandate requiring Hamilton to fill the Division Commander rank pursuant to merit law procedures and the Board's merit rules; appointing a neutral person to rate candidates for promotion within the Department for the subjective portion of the test; repealing the 1992 amendment to the Board's regulations establishing a special procedure for promoting retiring sheriffs; and restoring Stevens to the rank of merit deputy.

In April of 1995, Hamilton filed an answer and a counterclaim seeking the following three declarations:

> The Hamilton County Sheriff, with the approval of the Sheriff's Merit Board, has the authority to establish the temporary rank of Division Commander, to recommend the pay for that rank to the Hamilton County Council, to make an appointment to that position and to permit persons to serve in that position at the will of the Sheriff, with those appointees to be returned to their permanent merit rank at the conclusion of the appointment.

> \* \* \* \* \* \*

> The Plaintiff, Charles R. Murray, who was appointed to the temporary rank of Division Commander on March 24, 1992, upon recommendation of the Hamilton County Sheriff and approval by the Hamilton County Sheriff's Merit Board, may be returned to his permanent rank of Lieutenant, at the discretion of the Hamilton County Sheriff.

> \* \* \* \* \* \*

> The Hamilton County Sheriff's Merit Board lawfully appointed R. Daniel Stevens to the merit rank of Captain at the end of his term of Sheriff, pursuant to the requirements of Indiana Code 36–8–10–8.

(R. 76, 78, 80). Murray filed an answer to the counterclaim in May of 1995. On December 12, 1995, Murray filed a motion for order to file request for admissions and motion to produce, noting that Hamilton had failed to respond to the request for admissions within thirty days, and thus had admitted them. *See* Ind.Trial Rule 36. Later that same month, Murray filed his motion for summary judgment, brief in support thereof, and designation of evidence.

By January 15, 1996, after the present case was initiated, the Board had passed an additional resolution. That resolution maintained the rank of Division Commander with no substantial changes, and abolished the rank of Merit Captain. The qualifications set out for Division Commanders were the same as those for a merit deputy, and no competition was required. Since then, at least two persons have become Division Commanders under the non-competitive procedures.

In February of 1996, Hamilton filed its own motion for summary judgment, along with a response to Murray's motion, a brief, a designation, and an affidavit. Murray filed a response to Hamilton's motion for summary judgment and a reply to Hamilton's response. Following a hearing on both summary judgment motions, the trial court gave the parties an opportunity to file supplemental briefs. Murray filed a supplemental brief and designation of new evidence. Hamilton filed a response to the brief, but joined Murray in asking the trial court to consider the additional designation of evidence. The trial court did consider the new evidence when it entered its order granting Hamilton's motion for summary judgment and denying Murray's motion. Murray appeals that order.

### Discussion and Decision

 "[A] mandate is an extraordinary remedy, expressly provided for by statute, which may be sought against a public officer to compel performance of any act which the law specifically enjoins or any duty resulting from any office, trust or station." *Brant v. Custom Design Constructors Corp.*, 677 N.E.2d 92, 95 (Ind.Ct.App.1997); Ind.Code § 34–1–58–1. A party requesting mandate must have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded. *Brant,* 677 N.E.2d

at 95. Orders of mandamus will not be granted to control the discretionary action of a public officer, board, or commission. *Id.* at 100.

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters specifically designated to the trial court by the moving party for the purposes of the motion for summary judgment. *Tom v. Voida,* 654 N.E.2d 776, 781 (Ind.Ct.App.1995), *trans. denied.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind. 1993); Ind.Trial Rule 56(C), (H).

### I. Temporary Administrative Ranks

■ Murray asserts that the sheriff's merit law does not permit the Board to create temporary administrative ranks to which officers are (a) appointed at the will of the Sheriff and/or his Board without competition; and (b) returned to their prior permanent rank at the will of the Sheriff and/or Board at the conclusion of the appointment. Instead, Murray claims that the merit law imposes a clear legal duty on Hamilton to make each promotion to every rank or position they create, including Division Commander or Captain, a permanent merit rank pursuant to the merit plan, including tenure for such rank.

■ Regarding this issue, the trial court stated in its findings:

5. The Hamilton County Sheriff has the authority to assign a person to perform the duties described in the position of Division Commander, without approval of the Board, pursuant to Indiana Code 36–8–10–4(a).

　　＊　　＊　　＊　　＊　　＊　　＊

7. The Board's creation of the temporary position of Division Commander, the assignments of duties by the Sheriff to persons holding the position of Division Commander, and the compensation approved by the Hamilton County Council for officers serving as Division Commander are not in violation of the statutory dictates of Indiana Code 36–8–10–10.

(R. 436). "The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved." *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). We are not bound by the trial court's specific findings of fact and conclusions of law in the summary judgment context. Rather, they merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Because there are no disputed facts and the questions presented are pure questions of law, we review these matters *de novo. See City of Wabash v. Wabash County Sheriff's Department,* 562 N.E.2d 1299, 1300 (Ind.Ct.App.1990) (summary judgment case in mandate setting). When, as here, the meaning of a statute is at issue, we follow several rules of statutory construction. *See* Ind.Code § 1–1–4–1(1). We do not and may not interpret a statute that is facially clear and unambiguous. Instead, we give the statute its plain and clear meaning. *Skrzypczak v. State Farm Mut. Auto. Ins.,* 668 N.E.2d 291, 295 (Ind.Ct.App.1996). If a statute is ambiguous, we seek to ascertain and give effect to the legislature's intent. *Id.* In so doing, we read an act's sections as a whole and strive to give effect to all the provisions, *id.,* so that no part is held meaningless if it can be reconciled with the rest of the statute. *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied.* We presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Walling v. Appel Service Co., Inc.,* 641 N.E.2d 647, 651 (Ind.Ct. App.1994).

Today, Ind.Code § 36–8–10–4(a) states: "A county police force is established in each county. The members are employees of the county, and the sheriff of the county shall

assign their duties according to law." The merit law currently provides:

(a) Except for the positions of chief deputy and prison matron, the sheriff, with the approval of the board, shall establish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade, and position established, the sheriff, with the approval of the board, shall:

(1) set reasonable standards of qualifications; and

(2) fix the prerequisites of:

(A) training;

(B) education; and

(C) experience.

(b) The sheriff, with the approval of the board, shall devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions. After these examinations, the sheriff and the board shall jointly prepare a list naming only those applicants who in the opinion of both the sheriff and the board best meet the prescribed standards and prerequisites. The sheriff appoints county police officers, but only from among the persons whose names appear on this list. All county police officers appointed to the department under this chapter are on probation for a period of one (1) year from the date of appointment.

Ind.Code § 36–8–10–10.

■ Ordinarily, the word "shall" in a statute is presumed to be mandatory, *Butler v. Heffelmire*, 548 N.E.2d 1217 (Ind.Ct.App. 1990), unless it is clear from the context that the General Assembly intended otherwise. *City of Wabash*, 562 N.E.2d at 1301. There is no indication from the context that the Legislature meant for "shall" as used in Ind. Code § 36–8–10–10 not to be mandatory. In fact, the mandatory nature of this section is supported by its history, as set out more fully below.

It has long been recognized in this State that better police service is insured by police departments being free from political control and by the members of such departments having a tenure of office dependent only on

their ability to perform and conscientious performance of their duties. *Coleman v. City of Gary*, 220 Ind. 446, 44 N.E.2d 101, 106 (1942). To that end, in 1961, the Indiana General Assembly empowered, but did not require, certain large population counties to create a sheriff's merit board. Acts 1961, ch. 285. Section 3 of the Act (now Ind.Code § 36–8–10–4) created a "county police force" in each county which elected to create a merit board. The members were all county deputy sheriffs who had served more than one year. Acts 1961, ch. 285, § 7. The statute designated them as employees of the county. *Id.* at § 3.

In such counties, the sheriff, with the approval of the board, was required to establish a classification of ranks, grades, and positions for county police persons. For each rank, grade, and position so established, the sheriff, with the approval of the board, was required to set reasonable standards of qualifications, and fix the prerequisites of training, education, and experience. *Id.* at § 5 (now Ind.Code § 36–8–10–10). The sheriff, with the approval of the board, was required to devise and administer examinations designed to test applicants as to the qualifications required for the respective ranks, grades, or positions. Only those applicants who in the opinion of the sheriff and the board best met the prescribed standards and prerequisites could be appointed.

In 1971, the General Assembly made a merit plan mandatory for all counties in the state. Former § 1, *as amended by* P.L. 241–1971; *see* current Ind.Code § 36–8–10–1 ("This chapter applies to all counties."). The Hamilton County Council then created the Board, which in turn, adopted rules. Eventually, stylistic as well as some substantive changes were made to § 5 (now Ind.Code § 36–8–10–10). Originally, all members of the county police force were to be hired and promoted within the merit system. However, in 1975, at the request of the Indiana Sheriff's Association, the sheriffs were first given "complete hiring authority" over the positions of chief deputy and prison matron. P.L. 164–1975, § 1. In 1989, the original subsection (b) language, "Only those applicants who in the opinion of the sheriff and

the board best met the prescribed standards and prerequisites may be appointed" was deleted and replaced with the more restrictive current language requiring examinations and preparation of a list of the names of the only persons who could be appointed. P.L. 314–1989, § 1.

From the above history, we glean that the Legislature viewed the merit system as important enough to require that every county utilize it, and to require, at least at one time, that it be utilized for every position. Only recently, and only when explicitly requested to make a change, did the Legislature exempt certain positions from the merit law. We presume that if the Legislature wished to permit other positions, besides that of prison matron and chief deputy, to be administered outside of the merit system, it could have amended the statute to indicate as such. However, the Legislature has not. To the contrary, the statute explicitly provides that for all other ranks, grades, or positions established, the sheriff and the board *shall* set reasonable standards of qualifications, shall fix the prerequisites of training, education, and experience, *shall* devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions, and thereafter *shall* jointly prepare a list naming only those applicants who in their opinion best meet the prescribed standards and prerequisites. Only then may the sheriff appoint county police officers, and only from among the persons whose names appear on this list. Ind. Code § 36–8–10–10. Simply put, the current merit law does not permit Hamilton's system of discretionary temporary positions, i.e. Division Commander/Captain.

## II. Promoting a Retiring Sheriff

■ Murray's second contention is also one of statutory construction. He argues that the merit law imposes a clear legal duty upon the Sheriff and the Board to follow the promotional procedures and qualifications in Ind.Code § 36–8–10–10 in promoting a former sheriff pursuant to Ind.Code § 36–8–10–8. Thus, he asserts, the Board may not adopt a procedure under Ind.Code § 36–8–10–8 which does not involve the competitive testing procedures under Ind.Code § 36–8–10–10. We disagree.

The relevant statute, "Reinstatement of sheriff following expiration of term of office," states:

> A member of the department who becomes sheriff either by election or by appointment shall, upon the expiration of his term and upon his written application, be appointed by the board to the rank in the department that he held at the time of his election or appointment as sheriff, if there is a vacancy in the department. However, if the sheriff during his tenure of office has qualified in accordance with the promotion procedure prescribed by the board in its rules for a rank in the department that is higher than the rank he previously held, the board shall, upon the expiration of his term as sheriff, appoint him to the rank for which he has qualified under the promotion procedure if there is a vacancy in that rank.

Ind.Code § 36–8–10–8.

In Ind.Code § 36–8–10–8, the Legislature could have specifically required sheriffs to qualify for new ranks in accordance with the competitive procedures set out in Ind.Code § 36–8–10–10, thus placing decision making power over an individual sheriff's fate with both the board and with that sheriff. However, the Legislature did not do so. The Legislature enacted a completely separate section applicable to former sheriffs. Thus, we presume the Legislature did not intend to incorporate by reference the requirements of Ind.Code § 36–8–10–10 into Ind.Code § 36–8–10–8.

Moreover, this interpretation recognizes that serving as a sheriff may provide unique experiences which should be given weight when determining the appropriate rank of a retiring sheriff. As such, this interpretation helps cure the problem of departments losing career county police officers because they had been elected and served as sheriffs. *See* Acts 1969, ch. 282, § 4. Further, granting to boards (rather than to boards and sheriffs) the authority to prescribe promotion procedures for sheriffs prevents a sheriff from using the authority he/she normally has under Ind.Code § 36–8–10–10 (to set standards

of qualifications, to fix prerequisites of training, education, and experience, to devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions, and to jointly prepare a list naming those applicants who best meet the prescribed standards and prerequisites) to unfairly further his/her cause. Accordingly, we cannot say that Murray has a clear and unquestioned legal right to the relief sought regarding former sheriffs. In reaching this conclusion, we do share Judge Rucker's concerns. However, we feel that the language of the statute requires this result.

Reversed in part, and affirmed in part.

NAJAM, J., concurs.

RUCKER, J., concurs in part and dissents in part with separate opinion.

RUCKER, Judge, concurring in part and dissenting in part.

I agree with the majority's resolution of issue one. As to issue two, I agree also that we may presume the Legislature did not intend to incorporate by reference the requirements of Ind.Code § 36–8–10–10 into Ind.Code § 36–8–10–8. For example, among other things Ind.Code § 36–8–10–10 requires that appointments to various ranks, grades, and positions be made from a list, and that appointees serve a one year period of probation. There is no indication the Legislature intended that such requirements apply to a retiring Sheriff. However, it is my view that the Board nonetheless exceeded its statutory authority by appointing Sheriff Stevens to the rank of Captain.

Under Ind.Code § 36–8–10–8 the Board may appoint a retiring Sheriff to a rank higher than that which he held at the time of taking office provided the Sheriff is "qualified in accordance with the promotion procedure proscribed by the board in its rules for a rank in the department. . . ." In my view this provision anticipates the existence of already established rules for rank. I do not see it as an authorization for the Board to create a special rule applicable only to a retiring Sheriff. The record shows the rules setting forth a promotion procedure for all ranks in the Sheriff's department above merit deputy were enacted by the Board in 1986. These same rules were in effect at the time of Sheriff Steven's appointment in 1994. For the rank of Captain the procedure required, among other things, completion of a written examination and prior service at the rank of Lieutenant. The record shows Sheriff Stevens was not eligible for promotion to Captain because he did not qualify "under the rules for a rank in the department." Therefore I dissent from the majority on this point and would reverse the judgment of the trial court. In all other respects I concur.