**Jack MARTIN, Appellant–Plaintiff,**

**v.**

**Melvin CARRAWAY in both his individual and official capacities as Superintendent of the Indiana State Police; George D. Gardner, James W. Heyde, David J. Allen, Robert B. McConnell, Gwendolyn J. Morgan, and Pat J. Bennett, each one in his or her individual and official capacity as a member of the Indiana State Police Board, Appellees–Defendants.**

**No. 29A02–9901–CV–11.**

Court of Appeals of Indiana.

June 11, 1999.

---

Brenda Franklin Rodeheffer, Monday Rodeheffer Jones & Albright, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Anthony Scott Chinn, Special Counsel to the Attorney General, Anthony W. Overholt, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Plaintiff Jack Martin ("Martin") appeals the summary judgment entered against him in his action against Appellees–Defendants Melvin Carraway, Superintendent of the Indiana State Police, and the members of the Indiana State Police Board ("ISP") challenging ISP's "spot promotion" or "spot assignment" practice. Specifically,

Martin contends that ISP violated state law and principles of due process when it returned him to his permanent rank of Major from his spot assignment rank of Lieutenant Colonel. We affirm.

### Issues

Martin raises five issues which we restate and consolidate as follows:

I. Whether ISP's internal personnel rules and regulations which permit the temporary assignment of personnel to a higher rank by way of a "spot promotion" or "spot assignment" violate the Indiana State Police Act.

II. Whether Martin's due process rights were violated when the ISP returned him to his permanent rank of Major from his "spot assignment" rank of Lieutenant Colonel.

### Facts

The operative facts are undisputed. Martin is a career state police officer, having risen through the ranks to the permanent merit position of Major. (R. 256–57). While a state trooper, Martin earned his law degree and is a licensed attorney. (R. 255). Martin became Chief Counsel for the ISP. (R. 260).

The ISP maintains internal rules regarding employee assignment and promotions. (R. 130–31, 203, 209–14). An employee may receive either a regular promotion or a "spot promotion," also known as a "spot assignment." Although the formal ISP rules have been repealed, the former Indiana State Police Rule § 5–10 read as follows:

*Spot Promotions*

A. A spot promotion may be made in cases in which the duty to be performed may be particular in nature. The Indiana State Police Board may, upon recommendation of the superintendent, designate positions as spot assignments. Spot assignments may involve temporary increases in rank. The following conditions shall apply to spot assignments:

. . . .

2. any employee so assigned may be returned, by the superintendent, to his former permanent rank, grade, or position at any time, without recourse, and he shall sign a waiver to that effect as a condition to such spot assignment. Such return shall not constitute a demotion.

(R. 207). Spot promotions do not confer a permanent rank on employees but are temporary assignments to a higher rank designed to accomplish a specific personnel goal, such as assembling an executive staff for the superintendent. (R. 186, 191). In fact, when the superintendent's executive staff is assembled, the deputy superintendents are ordinarily given spot promotions to the rank of Lieutenant Colonel while their permanent ranks remain at Major or Captain. (R. 203).

When receiving a promotion, Indiana State Police Officers must sign a form which clearly designates whether the promotion is a "regular promotion" or a "spot assignment." (R. 191–95). The "spot assignment" waiver form reads as follows:

> SPOT ASSIGNMENT: I understand that my appointment to the grade indicated above is a spot assignment because the duties that I am to perform in such grade may be of a temporary nature, and that under the Regulations of the Department the Superintendent may return me to my permanent grade at any time. I further understand that such return to my permanent grade, should it become necessary, shall be without recourse on my part and that it will not constitute a demotion. I hereby voluntarily waive all rights that I may have under the Indiana State Police Act or any other law of the State of Indiana which might be construed to apply to such return to my permanent grade from the grade to which I have been appointed by virtue of this spot assignment, including the right to have written charges filed against me by the Superintendent, and the right to hearings before the Superintendent and the State Police Board, provided I am returned to a grade no lower than my permanent grade.

(R. 191).

When Martin served as the ISP's chief legal counsel, he regularly defended the ISP's practice of granting spot promotions and issued a written legal opinion which read in pertinent part as follows:

[I]t is evident that an officer [reclassified to his] former rank through the 'spot promotion' procedure will not have a constitutional right claim in the federal court system.... In my legal opinion, the 'spot promotion' procedure is permissible and legally defensible. The possibility of an officer prevailing with a claim in federal court is extremely remote in view of the recent cases in this Circuit. The probability of an officer prevailing with a claim in state court is remote unless said officer had been given assurances outside of the written documents used in this procedure. (R. 181–83).

In June of 1994, Martin received a spot promotion to the rank of Lieutenant Colonel. (R. 114–15, 125, 154–55). In accepting this temporary assignment, Martin signed the waiver form set out above. (R. 195). As the ISP's chief legal counsel and deputy superintendent, he reported directly to the superintendent, rendered confidential legal advice to the superintendent, served as the ISP's liaison with the attorney general's office, and made recommendations concerning ISP policy. (R. 123–26, 161–63).

When the present superintendent was appointed in 1997, Martin was reassigned to direct the communications office and was returned to his permanent rank of Major. (R. 116, 156–57, 204). Martin reversed his former legal position and initiated the present litigation challenging the legality of ISP's spot promotion practice. (R. 14). The trial court entered summary judgment in favor of the ISP. (R. 330). This appeal ensued.

### Discussion and Decision

*Standard of Review—Summary Judgment*

As stated in *Barnes, as Mayor of the City of Gary v. Antich,* 700 N.E.2d 262, 264–65 (Ind.Ct.App.1998), *trans. denied:*

In reviewing a motion for summary judgment, this court applies the same standard as the trial court. We must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Neither the trial court, nor the reviewing court, may look beyond the evidence specifically designated to the trial court. Once the movant for summary judgment has established that no genuine issue of material fact exists by submission of materials contemplated by T.R. 56, the nonmovant may not rest on his pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred....

### I. Legality of ISP's Internal "Spot Assignment" Procedure

■ Martin argues the ISP lacks the authority under the Indiana State Police Act, IND.CODE § 10–1–1 to create temporary administrative ranks or spot promotions. We disagree.

### A. Statutory Construction

■ As stated in *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602 (Ind.Ct. App.1996), *trans. denied:*

When interpreting a statute, the foremost objective is to determine and effect legislative intent. Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute.

*Id.* at 605. The meaning and intention of the legislature are to be ascertained not only from the phraseology of the statute but also by considering its nature, design, and the consequences which flow from the reasonable

alternative interpretations of the statute. *Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind.Ct. App.1995), *trans. denied.*

It is well settled that agencies have implicit power and authority as is necessary to fulfill the broad grant of authority given that agency by the legislature. *Knox County Rural Electric Membership Corporation v. PSI Energy, Inc.,* 663 N.E.2d 182, 189 (Ind.Ct.App.1996), *trans. denied.* Moreover, the interpretation given a statute by an agency charged with the duty of implementing that statute is entitled to great weight. *Marion Teachers Association v. Board of School Trustees of Marion Community School Corporation,* 643 N.E.2d 370, 372 (Ind.Ct.App.1994), *summarily aff'd,* 672 N.E.2d 1363. The promulgation and enforcement of rules that relate solely to internal agency policy, procedure, or organization do not have the effect of law and are not subject to the statutory requirements imposed under the Administrative Orders and Procedures Act. *See* IND.CODE § 4–22–2–13(c)(1); *Indiana Department of Environmental Management v. AMAX, Inc.,* 529 N.E.2d 1209, 1212 (Ind.Ct.App.1988).[1]

### B. Indiana State Police Act

Indiana Code § 10–1–1–3 reads in pertinent part as follows:

(a) The superintendent, with the approval of the board, shall have authority to formulate and adopt into effect such rules for the government of the department as, from time to time, seem fit to him. He shall, with the approval of the board, establish a classification of ranks and grades and positions in the department, and for each rank, grade, and position he shall designate the authority and responsibility within the limits of this chapter. For each such rank, grade, and position so established, the superintendent shall set standards of qualifications, in conformity with the most approved plans and standards adopted in other states, dominions, and provinces, and he shall fix the prerequisites of training, education, and experience; and the board shall, with the approval of the budget agency and the governor prescribe the salaries to be paid.

(b) The superintendent, with the approval of the board, shall, from time to time, in accordance with the rules adopted by him, designate the rank, grade, and position to be held by each employee of the department, until such person shall be by him designated to hold another rank, grade, or position. He shall have authority to assign and reassign each employee of the department to serve at such stations, and within the limits of this chapter to perform such duties as he shall designate....

Indiana Code § 10–1–1–4(a) reads, in pertinent part, as follows:

The superintendent shall, with the approval of the board ... appoint such personnel to the ranks, grades, and positions of the department as are deemed by the superintendent to be necessary for the efficient administration of the department.

### C. The Murray Decision

In support of his argument, Martin relies exclusively on our decision in *Murray v. Hamilton County Sheriff's Department,* 690 N.E.2d 335 (Ind.Ct.App.1997), a case decided under IND.CODE § 36–8–10 which governs County Sheriff's Departments. Martin correctly points out that the *Murray* court held that County Sheriffs, constrained by the language of IND.CODE § 36–8–10, do not have authority to make discretionary temporary appointments outside the merit system. The statutory language under scrutiny in *Murray* reads as follows:

A county police force is established in each county. The members are employees of the county, and the sheriff of the county shall assign their duties according to law.

---

1. Incidentally, another state law enforcement agency, the Indiana Alcoholic Beverage Commission, has promulgated a rule which reads as follows:

A non-probationary officer serving on a spot appointment may be returned to the officer's permanent rank at the will of the superintendent. The return to permanent rank of an officer, who has been serving on a spot appointment, does not constitute a demotion, does not require the preferring of charges, does not require a predisciplinary meeting and is not subject to review under section 8 of this rule.

Ind. Admin. Code tit. 905, r. 1–42–6(d) (authorized by IND.CODE § 7.1–2–2–12).

. . .

(a) Except for the positions of chief deputy and prison matron, the sheriff, with the approval of the board, shall establish a classification of ranks, grades, and positions for county police officers in the department. For each rank, grade, and position established, the sheriff, with the approval of the board, shall:

(1) set reasonable standards of qualifications; and

(2) fix the prerequisites of:

(A) training;

(B) education; and

(C) experience.

(b) The sheriff, with the approval of the board, shall devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions. After these examinations, the sheriff and the board shall jointly prepare a list naming only those applicants who in the opinion of both the sheriff and the board best meet the prescribed standards and prerequisites. The sheriff appoints county police officers, *but only from among the persons whose names appear on this list.* All county police officers appointed to the department under this chapter are on probation for a period of one (1) year from the date of appointment.

IND.CODE §§ 36–8–10–4(a), 10; *Murray,* 690 N.E.2d at 339–40. The *Murray* court held:

[T]he statute explicitly provides that for all other ranks, grades, or positions established, the sheriff and the board *shall* set reasonable standards of qualifications, shall fix the prerequisites of training, education, and experience, *shall* devise and administer examinations designed to test applicants for the qualifications required for the respective ranks, grades, or positions, and thereafter *shall* jointly prepare a list naming only those applicants who in their opinion best meet the prescribed standards and prerequisites. Only then may the sheriff appoint county police officers, and only from among the persons whose names appear on this list. IND. CODE § 36–8–10–10. Simply put, the current merit law does not permit [the county's] system of discretionary temporary positions, i.e. Division Commander/Captain.

*Id.* at 341 (emphasis of word "shall" in original referring to IND.CODE § 36–8–10–10).

## D. Analysis

While IND.CODE § 10–1–1–3(a) of the State Police Act as set out above arguably contains some similarities to IND.CODE § 36–8–10–10, the two statutes also contain some key differences. Importantly, the State Police Act does not mandate explicit procedures to which the superintendent of the ISP must adhere. The State Police Act does not mandate the generation of lists from which the successful applicants must be chosen. Moreover, the State Police Act vests the superintendent himself with substantial discretion. For example, as set out above, IND.CODE § 10–1–1–3(a) reads "[t]he superintendent, with the approval of the board, shall have authority to formulate and adopt into effect such rules for the government of the department *as, from time to time, seem fit to him.*" (emphasis added). Based on the above, we hold that the ISP's practice of making spot assignments or promotions is not prohibited by the State Police Act or otherwise illegal.

## II. Due Process

■ Martin contends that he was demoted without cause and without the procedural protections afforded by IND.CODE § 10–1–1–16. Martin argues that his property interest in his rank of Lieutenant Colonel was taken without due process of law.

### A. Property Interest in Government Employment

■ A public employee does not have a due process right in a job merely because he is a public employee. *Speckman v. City of Indianapolis,* 540 N.E.2d 1189, 1193 (Ind. 1989). Property interests are not created by the United States Constitution, but rather by existing rules or understandings that stem from an independent source such as state law. *Id.; Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The *Roth* court stated:

To have a property interest in a benefit [such as a job] a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral ex-

pectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.; Speckman,* 540 N.E.2d at 1193. "Property" denotes a broad range of interests that are secured by existing rules or understandings. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A person's interest in a benefit is a property interest entitled to due process protection if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit. *Id.*

### B. Analysis

Under the present circumstances, Martin cannot seriously claim a legitimate expectation of, or entitlement to, a permanent promotion to the rank of Lieutenant Colonel. As the former chief counsel, Martin was intimately familiar with, and defended, ISP's spot promotion practice. The waiver signed by Martin as a condition of his spot promotion emphasized the temporary nature of the promotion and that the Superintendent could return him to his permanent grade at any time without recourse on his part.[2] Therefore, we conclude as a matter of law that Martin's interest in a spot promotion is not entitled to due process protection. Therefore, the trial court correctly entered summary judgment in favor of the ISP.

Affirmed.

FRIEDLANDER, J., and STATON, J., concur.

---

**2.** Martin argues that public employees cannot be required to waive their due process rights. However, as explained above, Martin was not asked to waive any right entitled to due process protection.