FOR PUBLICATION

ATTORNEYS FOR APPELLANT
: 
ATTORNEYS FOR APPELLEE
:

ANNE E. BECKER
 
AREND J. ABEL

KAROL H. KROHN MARK R. WATERFILL

RITA J. BALDWIN ALLISON J. WELLS 

Indiana Office of Utility Leagre Chandler & Millard

   Counselor Indianapolis, Indiana

Indianapolis, Indiana

IN THE

COURT OF APPEALS OF INDIANA

OFFICE OF UTILITY CONSUMER )

COUNSELOR, )

)

Appellant-Respondent, )

)

vs. ) No.  93A02-9802-EX-166

)

C&M UTILITY, INC., )

)

Appellee-Applicant. )

APPEAL FROM THE INDIANA UTILITY REGULATORY COMMISSION

Cause No.  40479

August 20, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

C&M Utility filed a petition with the Indiana Utility Regulatory Commission seeking to withdraw from the Commission's rate setting jurisdiction.  The Commission granted the petition but entered an order requiring C&M to make certain disclosures to its future customers.  In this appeal the Office of Utility Consumer Counselor (OUCC) contends the Commission erred in granting the petition because C&M did not qualify by statute to withdraw from the Commission's jurisdiction.  C&M cross appeals contending once the Commission granted the petition it had no authority to enter an order which in effect attempted to regulate C&M's utility rates.  

We affirm.
(footnote: 1)
 C&M is engaged in the business of providing sewage disposal service in rural Morgan County, Indiana.  On May 9, 1996, pursuant to the Public Service Act of 1913 ("the Act"), C&M filed with the Commission an application for a Certificate of Territorial Authority ("CTA").
(footnote: 2)  The holding of a CTA "should be required as a condition precedent" to the rendering of sewage disposal service.  Ind. Code § 8-1-2-89(b).  "No sewage disposal company shall commence the rendering of sewage disposal service in any rural area in the state of Indiana in which it is not actually rendering sewage disposal service, without first obtaining from the commission a certificate of territorial authority . . . ."  Ind. Code § 8-1-2-89(c).  In this case the CTA would allow C&M the exclusive right to offer public sewer utility service to homes in a newly-planned but not yet built residential development in rural Morgan County.  C&M also petitioned the Commission for approval of the utility rates it intended to charge potential customers.  

A hearing on C&M's petition was conducted on December 4, 1996.  However on September 20, 1997, before the Commission entered its ruling, C&M voted to withdraw from the jurisdiction of the Commission.  The essential facts giving rise to this decision are these. Prior to the July 1997 amendment to the Act, only a nonprofit public utility could withdraw from the Commission's rate setting jurisdiction.  The amendment however covered "eligible water or sewer utilit[ies]" as well as nonprofit private utilities.  Ind. Code § 8-1-2.7-2.  The term "eligible water or sewer utility" includes a "privately owned sewage disposal company that 
serves
 less than three hundred (300) customers."  Ind. Code § 8-1-2.7-1.2 (emphasis added).  Among other things withdrawal from the Commission's jurisdiction is conditioned upon a majority vote of the Utility's members or shareholders present at a specially called meeting.  Ind. Code § 8-1-2.7-7.  A shareholder is defined to include "the customers of that utility."  Ind. Code § 8-1-2.7-1.4 

At the time C&M conducted its vote to withdraw from Commission jurisdiction, C&M had not been granted a Certificate of Territorial Authority and had no sewer utility customers in its proposed service area.  Seven individuals participated in the vote:  two were prospective customers, and the remaining five were non-customer shareholders of C&M.  After the withdrawal vote, C&M filed with the Commission a petition to withdraw its request for initial rate approval.  Following a hearing, the Commission granted C&M's previously requested CTA and granted its petition to withdraw from the Commission's rate setting jurisdiction.  However, the Commission imposed additional disclosure requirements on C&M regarding the artificially low rates it proposed to charge.  This appeal followed.

Although variously stated, the crux of OUCC's argument is that at the time of its alleged withdrawal vote C&M did not have a CTA.  The argument continues that because C&M did not have a CTA, it could not have been legally serving any customers.  According to OUCC, the Act anticipates that in order to qualify for a withdrawal vote, a utility must be currently serving less than three hundred customers as opposed to intending to serve less than three hundred customers.  C&M concedes that it was serving no customers at the time of its withdrawal vote but contends the statutory mandate was followed because "[z]ero is obviously less than three hundred."  Brief of Appellee at 14.  C&M also argues that the OUCC has not pursued the appropriate statutory procedure for challenging its decision to withdraw from the Commission's rate setting jurisdiction, and thus, this court has no jurisdiction over this appeal. 

As for C&M's latter contention, we acknowledge that the failure to follow statutory requirements is a defect which will limit the authority of this court to entertain an appeal.  
Medical Licensing Bd. of Indiana v. Provisor
, 678 N.E.2d 814, 817 (Ind. Ct. App. 1997) 
reh'g. denied
.  However, we disagree with the assertion that this court lacks jurisdiction over this appeal.  Ind. Code § 8-1-2.7-8 provides in pertinent part:

Parties aggrieved by the decision to withdraw from commission jurisdiction or other interested parties must file an action in the circuit or superior court (of the county where the eligible water or sewer utility has its principal office) 
to contest compliance with this chapter
.  This section may not be filed more than thirty (30) days after the date of the vote on withdrawal from commission jurisdiction.

(emphasis added).  Among other things, the chapter sets forth the exclusive manner by which an eligible sewer utility may withdraw from commission jurisdiction including the times, dates and contents of written notice for a special referendum, Ind. Code § 8-1-2.7-5; the form of special ballots, Ind. Code § 8-1-2.7-7; the number required for a quorum to conduct business, Ind. Code § 8-1-2.7-6; and who is entitled to vote and the number of votes required, Ind. Code § 8-1-2.7-7.  In this case we do not view OUCC's challenge as contesting compliance with the provisions of Ind. Code § 8-1-2.7-1 
et seq
.  Rather, OUCC is challenging whether C&M could vote to withdraw in the first instance regardless of its compliance with the provisions of the statute.  For that purpose OUCC presented the matter to the Commission which did not rule in OUCC's favor.  It is from that ruling OUCC appeals. We conclude that we have jurisdiction to address the issues OUCC raises.  Accordingly we address the merits of this appeal.

When reviewing a statute our main objective is to ascertain and implement the intent of the legislature.  
State Employees' Appeals Comm'n v. Barclay
, 695 N.E.2d 957, 961 (Ind. Ct. App. 1998), 
trans. denied
.  To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute.  
Murray v. Hamilton County Sheriff's Dep't
, 690 N.E.2d 335, 339 (Ind. Ct. App. 1997).  In doing so, we attempt to give statutory words their plain and clear meaning.  
Rush v. Elkhart County Plan Comm'n
, 698 N.E.2d 1211 (Ind. Ct. App. 1998).
 
Reading the Act as a whole we agree with OUCC's contention that it requires a privately owned sewage disposal company to first obtain a CTA before it may opt-out of Commission jurisdiction.  As indicated above, under the Act a company must serve less than three hundred customers before it can withdraw from Commission jurisdiction.  I.C. § 8-1-2.7-1.2.  In turn, it cannot serve customers in the first instance until it has obtained a CTA.  I.C. § 8-1-2-89(c).  In this case, because C&M did not have a CTA at the time it voted to withdraw from the jurisdiction of the Commission its actions were at least premature.  That is so because the Commission subsequently granted C&M the necessary certificate.  The question now is whether, CTA in hand, the company should be required to take another vote.  The Commission held that to do so would be a duplication of effort.  R. at 61.  We agree.  A second vote would merely elevate form over substance.  While we reject C&M's contention that it need serve no customers in order to opt-out, at this juncture it would need only to service at least one of the two potential customers and then conduct a vote with the same members and shareholders who agreed to withdraw from the jurisdiction of the Commission in the first place.  There is nothing in the record before us suggesting that the result would be any different.  We conclude therefore that the Commission did not err in granting C&M's petition to withdraw from its jurisdiction.
(footnote: 3)   

On cross appeal C&M asserts that the Commission improperly exercised rate-setting jurisdiction by mandating that it make certain disclosures regarding the rates it is charging to its future customers in order to obtain a CTA.  According to C&M, the Commission is attempting to indirectly regulate the rates which C&M charges.  We disagree.

The Act provides that when granting a CTA, the Commission may place such conditions on the CTA's issuance which it determines are "necessary and desirable in the public interest."  Ind. Code §  8-1-2-89(e).  The record shows that C&M intends to charge its potential customers forty dollars ($40.00) per month for service.  The Commission determined the rate was artificially low in that it represents only a three percent (3%) return on investment.  Because C&M's petition to withdraw was granted, the Commission now has no control over the rates C&M charges it customers.  However, the Commission still must act in the public interest.  A requirement that C&M notify its customers that these initial rates do not provide an adequate return on investment is not an exercise in Commission rate-setting authority.  Rather, it is simply a vehicle through which the consuming public may be alerted that these initial rates may be subject to increase.  We find no error on this issue.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

IN THE

COURT OF APPEALS OF INDIANA

OFFICE OF UTILITY CONSUMER )

COUNSELOR, )

)

Appellant-Respondent, )

)

vs. ) No. 93A02-9802-EX-166

)

C&M UTILITY, INC., )

)

Appellee-Applicant. )

SULLIVAN, Judge
, 
dissenting

I agree with the majority’s conclusions that this court has jurisdiction to address the merits of the appeal and that C&M’s purported attempt to withdraw from Commission jurisdiction was premature.

Respectfully, but strongly, however, I dissent from the majority holding that the Commission appropriately granted the petition to withdraw without first requiring C&M to conduct another vote of the shareholders.  As noted by the majority, the term “shareholders” includes the customers of the utility.  I.C. 8-1-2.7-1.4 (Burns Code Ed. Repl. 1998).  Furthermore, the vote must be taken at a specially called meeting after notice has been given to every shareholder not less than thirty days before the date of the meeting.  I.C. 8-1-2.7-5 (Burns Code Ed. Repl. 1998).

   I fail to understand how the majority can invalidate the previous attempt to withdraw upon the basis that C&M did not have status to do so without first acquiring the CTA and yet validate a vote which was taken outside the contemplated purview of the statutory provisions governing such procedure.  The majority does so reasoning that “[t]here is nothing in the record before us suggesting that the result would be any different” because C&M would, upon revote only need to be servicing as least one customer and conduct a vote by the same “shareholders” who voted earlier.  This presupposition assumes that absolutely nothing would change with regard to the number of persons who would be “shareholders” at the particular point in time that a proper vote could be taken following issuance of the CTA.  It seems to me that, during the time frame contemplated, a utility might well, for financial or geographic reasons, see the need to increase the number of customers subscribing to the service.  For this and other possible reasons, there might be more than the original seven persons who would be eligible to vote.

Because it takes a majority of the voters to vote to opt out, addition of just a few more persons into the equation might change the outcome.  Furthermore, even some of those already voting to opt out might conceivably change their vote in light of the now available information that the $40 per month proposed utility charge is an inadequate return for the private shareholders.  They should have the opportunity to consider all information now available and if they believe their interests would be better served by Commission supervision of rates.  Conversely, those shareholders who are now utility customers under the new CTA might reasonably conclude that the initial rate is arbitrarily low and that, without Commission oversight, the rates might skyrocket once the utility achieves a monopoly over the 299 or fewer customers.  Accordingly, they may wish Commission oversight.

Be that as it may, I am not convinced that a vote to be cast in the near future would be identical to that cast September 20, 1997.  Nearly two years have elapsed since that date and the motivations and interests of the interested parties may have changed during the passage of that time.  Even if otherwise, the statute requires a vote to be taken under the proper procedures.  

I do not perceive it within our prerogative to disregard the legislative requirements for opting out; nor do I believe that it is appropriate to do so merely because the same result might likely be obtained as from the earlier vote.

I would reverse the Commission’s order granting withdrawal from its rate setting jurisdiction and would remand for further proceedings pursuant to statute.  

FOOTNOTES
1:  OUCC's Petition for Leave to Supplement its Reply Brief is hereby granted as of June 9, 1999. 

2:  Ind. Code § 8-1-2-89(e) provides in part:  "Whenever any sewage disposal company proposes to commence the rendering of sewage disposal service in any rural area, it shall file with the commission a verified application for a certificate of territorial authority to cover the proposed service."

3:  OUCC also contends that even if the Act permits a pre-certification vote to withdraw, the Commission decision nonetheless should be reversed "under fundamental state and federal common law consumer protection principles and state and federal constitutional due process principles that underlie existing utility regulatory safeguards."  Brief of Appellant at 14.  Although its constitutional argument is not fully developed, OUCC seems to contend that the less than three hundred customers C&M intends to serve are entitled to notice before the company can withdraw from Commission jurisdiction.  We agree the customers are entitled to notice.  The Act itself so provides.  
See
 Ind. Code § 8-1-2.7-5 
et seq
.  However as we have already explained any number greater than zero satisfies the provisions of the Act.  OUCC's chief complaint appears to be that larger numbers of customers or potential customers should have a voice in the opt-out decision.  However such an argument is more appropriately directed to the legislature to further amend the Act.